Marston, J.:
Edwin H. Wilson and William Wilson claimed title, as tenants in common, to a certain eighty acres of land, as devisees of George Barber, deceased.
On account, of a difficulty arising between Edwin and William, who were brothers, William took and retained exclusive possession of the west forty aci'es of said land, and Ed win of the east forty. While in this condition, and in October, 1867, *58 William conveyed to Robert Rowe Ms undivided interest to-the eighty aeres and to certain farming tools which had been owned by William and Edwin in common, for sixteen hundred dollars. On the same day Robert Rowe executed a mortgage to William to secure the payment of eleven hundred dollars, part of the sixteen hundred dollars purchase price of said ¡premises. This deed and mortgage each bore date October 12th, 1867, and were recorded the same day. Negotiations were soon thereafter entered into between Robert Rowe and Edwin H. Wilson for a partition of the land, and it was agreed between them that Rowe should retain, as his grantor had, the-west forty acres, and Edwin retain the east forty acres. But as the east forty was supposed to be the more valuable, and the parties could not agree upon the difference, they referred the question to a third party, who decided that Edwin H. should pay Rowe seventy-five dollars as the difference in value-between the two forties, about the payment of which there is-no dispute. Edwin H. and Rowe, to carry out this *agreement, then went to an attorney to have the-proper conveyances drafted. Rowe directed the attorney to draft a quit-claim deed to be executed by himself and wife to Edwin H., and a warranty deed for the latter to execute to Rowe. Edwin H., at the time these instruments were about to be executed, inquired why one was a quit-claim and the other a warranty. The legal difference was pointed out to-him and the attorney testified that “-in further explanation of the reason why one was a warranty deed and the other a quitclaim deed, Mr. Barber, the testator, having made his will giving the eighty to the boys Edwin Ií. and William, and he having, as I understand, been captured and taken as a prisoner to Andersonville, though the will had been admitted to probate, yet under the proofs it was possible that he was still alive and might at some time in the future come back and claim the land. As Edwin claims a title under that will, which might at some time in the future be set aside on the appearance of Barber, it was considered there that Robert ought to have for that and other reasons a warranty deed, and as-Robert’s interest was only acquired under the same will, and *59 he a stranger to the will, he gave only a quit-claim.” The deeds were then executed and each bears date October 22, 1867. Upon the 11th day of February, 1874, complainant, as assignee, files his bill to foreclose the mortgage of October 12, 1867, given by Robert Rowe' to William Wilson, claiming that there was then due thereon the sum of sixteen hundred and sixty dollars, or thereabouts. Defendant Edwin H. Wilson appeared and answered; the other defendants did not appear.
After the appearance and answer of defendant Edwin H. had been put m and part of the proofs had been taken, complainant petitioned the court for leave to amend his bill of complaint by setting forth the facts as to how he acquired his interest in the mortgage, which were as follows: “ That on or about the first day of August, 1868, the said Robert Rowe, acting as your orator’s agent, and with the means and under the instructions of your orator, purchased of the *said William Wilson for your orator the note given for the first installment named in said mortgage, and said note was then by said Wilson delivered to said Rowe for your orator; that afterwards, and on or about the first day of February, A. D. 1870, the said Rowe, still acting as the agent, and with the funds of your orator, purchased of the said William Wilson the note given for the second installment named in said mortgage, and said note was then delivered to said Rowe for your orator, but a formal assignment of an interest in said mortgage corresponding to said notes was not made until the 16th day of January, 1874.” From an abstract of title put in evidence it appeared that this mortgage was assigned by William Wilson to Lucius Babcock March 1,1871, and by Babcock to complainant July 3, 1873; and there also appears to have been another assignment from William Wilson to complainant January 10, 1874. It also appears from the abstract that complainant discharged the west forty acres from the operation of this mortgage July 3, 1873.
It is now insisted under the facts as stated that because Edwin H. Wilson, at the time of the partition, executed a warranty deed of the west forty to Robert Rowe, the premises “then severed to defendant Wilson were constituted the pri *60 mary fund for the payment of the mortgage debt, and he by his covenant therein assumed and became ultimately liable to pay it,” and Crawford v. Edwards, 33 Mich., 354, and kindred cases, are cited in support of this position. It is also insisted that at the time of the partition Edwin H. Wilson had constructive notice from the record of this mortgage, and also had actual notice and orally agreed to pay it. Admitting that an oral agreement thus made to pay the debt of another would have been valid, about which we express no opinion, there is almost a total lack of evidence, if we except Rowe’s, which is far from satisfactory, tending to support and establish any such agreement. The attorney who drafted the papers says there was language used to the effect that a warranty deed would bind a grantor to *proteet his grantee against incumbrances; and he also says, “I think there was talk between the parties when at my office, where the deeds were drawn, about the mortgage given by Robert Rowe to William Wilson. I can’t tell what the talk was; all I can say is that the fact that there was such a mortgage in existence was talked of; there was no bargain about that mortgage made between Rowe and Wilson in my presence.” A. C. Cadwell, who says he was present at this time, says: “Something was said about a mortgage and something said about a deed, but I cannot say what mortgage or deed it was. There was something said about the difference, by Mr. Dodge, the attorney, between a warranty and quit-claim deed, and Mr. Dodge explained the difference between them.” Rowe, when testifying, was asked, “Was there any arrangement at the time of the division between you and Edwin H. Wilson as to the payment of the mortgage, if so, what was the agreement ?” A. “Yes, sir, there was an agreement; it was that Edwin Wilson was to pay it.” And he also testified that the deeds were drawn in pursuance of that arrangement. He then attempts to show a consideration for this agreement, but his evidence, taken together, utterly fails to show any adequate consideration, if indeed it shows any at all, for Edwin Wilson undertaking to assume and pay this eleven hundred dollar mortgage. Wilson denies making any such agreement. In a case like the pres *61 ent, where there was really no consideration, beyond the mere partition, under the facts stated in this case, for such an agreement, the testimony should be clear and distinct to warrant the court in finding such an extraordinary agreement to have been entered into.
Nor does this case come within the principles of Crawford v. Edwards. In that case Edwards had accepted a deed of the mortgaged premises made subject to the payment of the mortgage debt, and in which Edwards had assumed the payment of it, and sufficient of the agreed consideration or purchase price of the land was left in his hands for that purpose. He thus, as between the parties, *became legally and equitably bound to pay the mortgage debt. No such considerations, however, exist in this case. No such agreement was made, and no equitable consideration arises under which he should be so bound. On the contrary it would be grossly unjust and inequitable to require him to make any such payment. No such liability arises from the covenant in the conveyance in this case. It was but a mere partition of the premises then owned' in common, and by analogy to a partition made under the statute, as between the parties, the lien would be transferred to the mortgagor’s half of the premises, which would become the primary security for the payment of the debt, and which must first have been sold for that purpose. Webb having discharged the part thus primarily liable, long after the time he became the equitable owner of this mortgage, as stated in his petition, if not the legal, as appears from the abstract, thereby lost any claim he might have had against Wilson’s share of the premises, as the west forty at the time of the discharge was worth more than the amount then claimed to be owing upon this mortgage.
The decree of the court below, dismissing the bill, must be affirmed, with costs.
The other justices concurred.