## THE STATE v. RYAN *et al., Appellants.*

In Banc, February 5, 1894.

**Practice:** BILL OF EXCEPTIONS: EXTENSION OF TIME OF FILING. An order of the trial court, first extending beyond the term the time of filing the bill of exceptions, is a necessary prerequisite to an extension of time by the attorneys under Revised Statutes, 1889, section 2168.

*Appeal from St. Louis Criminal Court.*—HON. RUDOLPH HIRZEL, Special Judge.

AFFIRMED.

*C. P. & J. D. Johnson* and *Charles T. Noland* for appellants.

(1) The bill of exceptions was filed in proper time. The time for filing the bill of exceptions was extended beyond the term at which the motions for a new trial and in arrest of judgment were overruled by written stipulations, signed by the attorneys of the parties to the suit, which stipulations ,were duly filed with the clerk of the trial court and by him copied into the transcript of the record now on file in this court. This was a full and complete compliance with the statute in force at the time. R. S. 1889, sec. 2168. All the cases cited by the attorney general were based on former statutes, and have no application to the point now in issue, unless it be to show some reasons why the amendment was adopted, by showing how injustice might be done, and justice denied, upon purely technical grounds, and thus inducing the legislature to strike down all technicalities preventing the review of appeals and open wide the doors of appellate courts.

*R. F. Walker*, Attorney General, and *C. O. Bishop*, Assistant Circuit Attorney, for the state.

(1) The purported bill of exceptions can not be considered by this court. Before the passage of the amended act of 1889 (R. S., sec. 2168) there was no statutory provision whereby a bill of exceptions could be filed after the term had elapsed, but a custom had grown, recognized by this court, by which such bill

could be filed after the term, or in vacation, by agreement of parties, sanctioned by order of court, entered of record. The amendment of 1889 is only by statute declaratory of that custom, legalizing what had theretofore been merely prescriptive. And an order of court entered of record is as necessary as before to authorize the filing of a bill of exceptions after the lapse of the term. *State v. Broderick*, 70 Mo. 622; *State v. Hill*, 98 Mo. 570; *State v. Berry*, 103 Mo. 367; *McCarty v. Cunningham*, 75 Mo. 279; *Carter v. Prior*, 78 Mo. 222; *State v. Scott*, 113 Mo. 559; *State v. Apperson*, 22 S. W. Rep. 375; *State v. Ryan*, 22 S. W. Rep. 486; *State v. Hilderbrandt*, 22 S. W. Rep. 805. (2) There is absolutely no error of record in this case. (3) The dying declaration of deceased, as testified to by the widow, was clearly admissible. The exclamations of deceased, "Oh, I am going to die!" "I won't live to see daylight!" and his directions to his wife as to where she would find his money, clearly indicated that his declarations as to how he had received his injuries "were made under a sense of impending death." 1 Greenl. on Evidence, sec. 158; *State v. Rider*, 90 Mo. 54. The fact that deceased lived for seventeen days after receiving the mortal stroke does not impair the force or competency of the dying declarations, even though he may have expressed a hope of recovery. *State v. Kilgore*, 70 Mo. 546; *State v. Swisher*, 26 Grat. 970. Defendant Ryan, at least, was in no wise prejudiced by the admission of this testimony. The evidence abundantly showed that he assaulted the deceased that night, and that he admitted on the following morning he had made the assault and regretted that it had not been fatal. (4) The instructions fully covered the law of the case and were exceedingly favorable to the defendants. (5) The objections to evidence were, for the most part, unaccompanied by any ground for its exclusion

and in but very few instances followed by exception. There was no evidence admitted that was incompetent, and no evidence excluded when offered by the defendants. (6) The evidence shows an unprovoked, inexcusable and brutal assault by three men upon one, and the punishment assessed was not commensurate with the crime. The judgment should be affirmed.

### DIVISION TWO.

SHERWOOD, J.—The defendants were jointly indicted for murder in the first degree, and on trial at the May term, 1892, Ryan was on June 25 convicted of murder in the second degree and Murphy of manslaughter in the third degree; the punishment of the former being at ten years, and of the latter at two years, in the penitentiary.

They filed their motion for a new trial June 30, 1892, which was denied at the July term and on the sixteenth day of that month. On July 20, 1892, and during the same term their motion in arrest was filed and also denied on the twenty-first day of July, and they were sentenced on the same day, and on the same day they were granted an appeal, and an order made that such appeal should operate as a *supersedeas*, etc.

On September 30, 1892, on the next day to the last of the July term, the parties stipulated in writing that the time for filing the bill of exceptions be continued and that the same might be filed at any time during the next term of the court. At the next, the October term, 1892, to wit, November 5, 1892, the parties filed another like stipulation that the time of filing the bill of exceptions might be continued and the same filed at the next term of the court. At the November term a like stipulation was filed by the parties on the twenty-ninth day of December, 1892, mak-

ing provision continuing the time of filing such bill to January 15, 1893, and that the same might be filed within that time.    The bill was signed and filed January 7, 1893.

There is nothing in the *record* showing an *order of court* extending the time for filing the bill of exceptions beyond the time at which it was taken, consequently, the stipulations filed from time to time must go for nothing.    The statute is express that the bill "may be filed at the time or during the term    *    *    *    at which it is taken, or within such time thereafter as the court may by *an order entered of record allow*," etc.    R. S. 1889, sec. 2168.

An order of court extending the time for filing beyond the term is just as essential to the validity of a bill under the amendatory statute, as it was under the practice which had previously prevailed and of which the statute is but declaratory.    *State v. Berry*, 103 Mo. 367, and cases cited.

In consequence of the foregoing, there is no bill of exceptions before us for consideration, and as there is no error in the record proper, judgment affirmed.    All concur.

### IN BANC.

PER CURIAM (BRACE, BARCLAY, SHERWOOD and BURGESS, JJ.).—After the announcement of the decision reported in 22 S. W. Rep. 486, the case was transferred to the court *in banc* by reason of the dissent of one of the judges in the second division upon the motion for rehearing.    It has been reargued before all the judges.    The court approves the action of the second division, with these further observations:

The amendment which was engrafted upon the law of 1885, by section 2168 of the revision of 1889, was intended to regulate one general subject, namely, the

mode of obtaining a further extension of time to
file a bill of exceptions after the lapse of the term at
which an appeal is taken, where the extension has first
been secured at that term to a date beyond it. But
the amendment did not purport to eliminate any part
of the law of 1885 (Sess. Laws, 1885, p. 215, sec. 1),
which expressly required the sanction of the court to
give validity to a bill of exceptions filed after the final
term of the proceedings in any cause. *Webster Co. v.
Cunningham* (1890), 101 Mo. 642. It merely added
certain facilities for longer extensions to be made after
the term of the judgment had expired.

By the language of section 2168 a further expan-
sion of time is obtainable either by leave of the court
or judge, upon a showing of good cause without the
consent of the adverse party, or with such consent (or
that of the attorneys), evidenced by writing, irrespec-
tive of the action of the court or judge.

Prior to this law it had been definitely held that
such a stipulation of counsel, after the term of the final
judgment, was ineffectual to enlarge the time allowed
to file such a bill. *West v. Fowler* (1875), 59 Mo. 40.
So that the change of 1889 certainly relaxed the rigidity
of the existing law on that point.

But does the act carry in its terms any purpose to
wholly dispense with the consent or approval of the
court, in the first instance, to the prolongation of the
life of the cause after the lapse of the term when it
would ordinarily close? We think not. If such had
been its design the word *"thereafter"* (where it occurs
in the new matter of 1889) would surely have been
omitted. That adverb plainly refers to the making of
the order of court, extending time beyond the judg-
ment term; and clears away any doubt, that otherwise
there might be, of the meaning intended by the law-
giver. It unfolds very plainly the idea that, where the

court has once sanctioned the making of the bill beyond the term, a written agreement of parties (or of their counsel) may "thereafter" still further extend the time.   But that word would be wholly meaningless if counsel had, from the start, full control of the making of the record of court for a subsequent term without the sanction of the court itself in the first place.

It is a canon of interpretation that all the words of a law should be given force rather than that any part of it should be obliterated by construction.  Applying this guide, we see that the word "thereafter" must now be ignored, or, rather, written out of the law, in order to arrive at the meaning contended for by defendant's counsel.   But we think that word was intended to play a part in expressing the legislative thought; and that some, rather than no, significance should be ascribed to it.   We furthermore consider that construction of the law the more reasonable and natural one; and that it (more than the converse reading proposed) will conduce to the orderly, safe and regular administration of justice.

As the question of present concern is simply what construction should be placed on the language of our own statute, we do not consider it needful to examine the ancient history of bills of exceptions in England or the exact terms of the statute of Edward the First on the subject.

We therefore adhere to the conclusion heretofore reached in the second division, affirming the judgment of the trial court. BLACK, C. J., and GANTT, J., dissenting.

GANTT, J. *(dissenting).*—The defendants were tried in the St. Louis criminal court, at the May term, 1892, and were convicted—Ryan, of murder in the second

degree; Murphy of manslaughter. At the same term, they filed their motions for a new trial, which was continued by the court until the July term. At the July term the motions for new trial were overruled, also their motions in arrest, and they were sentenced in accordance with the verdicts in the case. Thereupon they filed their affidavits for appeal to this court, and the appeal was granted and a *supersedeas* until the further order of this court.

At the July term, and on September 30, 1892, the following stipulation was filed in said St. Louis criminal court:

"The State of Missouri,  ⎫
      *v.*                      ⎬
"Con. Ryan and Wm. Murphy. ⎭

"In the St. Louis Criminal Court, July Term, 1892.

"It is hereby stipulated and agreed by and between the circuit attorney, representing the state, and the attorney for the defendants that the time of filing the bill of exceptions and perfecting an appeal herein is continued to the next term of said court, during which term it may be filed with the same force and effect as if filed at this term.

"ASHLEY C. CLOVER,

"Circuit Attorney.

"THOS. B. HARVEY and

"F. M. McDONALD,

"Of Counsel for State.

"CHAS. P. JOHNSON,

"Attorney for Defendants."

The October term was the next term, under the statutes of this state. At the October term another stipulation was filed in said criminal court, on Saturday, November 5, 1892, as follows:

"State of Missouri,.
   *v.*
"Con. Ryan and Wm. Murphy.

 "In the St. Louis Criminal Court.

 "It is hereby stipulated and agreed by and between the circuit attorney of the city of St. Louis, prosecuting in the above entitled cause, and the attorneys for the defendants that the time of filing the bill of exceptions and perfecting an appeal herein is continued to the next term of said court, within which time it may be filed with the same force and effect as if filed at this term.

       "ASHLEY C. CLOVER,
        "Circuit Attorney.
       "L. A. McGINNIS and
       "CHAS. P. JOHNSON,
        "Attorneys for Defendants."

 At the November term, 1892, this further stipulation was filed in said criminal court:

"State of Missouri,
   *v.*
"Cornelius Ryan and William
  Murphy.

 "In the St. Louis Criminal Court.

 "It is hereby stipulated and agreed by and between the circuit attorney for the city of St. Louis, prosecuting in the above entitled cause, and the attorneys for the defendants that the time for filing the bill of exceptions and perfecting an appeal therein is continued to the fifteenth day of January, 1893, within which time it may be filed with the same force and effect as if filed at this term.

       "ASHLEY C. CLOVER,
        "Circuit Attorney.
       "CHAS. P. JOHNSON and
       "L. A. McGINNIS,
        "Attorneys for Defendants."

On Saturday, January 7, 1893, and at the January term, 1893, of said court, the following entry appears on the record:

"The State of Missouri,
 v.
"Cornelius Ryan and William
 Murphy. } Murder in first degree.

"This day the defendants, by their attorneys, file their bill of exceptions."

The bill of exceptions closed with the following attestation by Judge HIRZEL, who tried the cause:

"Stipulations having been filed, as set out in the record, extending the time for filing bill of exceptions and perfecting the appeal herein until the fifteenth day of January, 1893, now, at this time, the defendants, by their counsel, presented this, their bill of exceptions, and prayed that the same be signed, sealed and made a part of the record of this court, which is accordingly done, this seventh day of January, 1893.

                    "RUDOLPH HIRZEL,
"Judge, etc., Thirteenth Judicial Circuit of Missouri."

No motion was made to strike out this bill, but the point was made for the first time in the brief of the attorney general that the bill could not be considered by this court.

Section 2168, Revised Statutes, 1889, reads as follows: "Such exceptions may be written and filed at the time or during the term of court at which it is taken, or *within such time* thereafter as the court may by an order entered of record, allow which may be extended by the court or judge in vacation for good cause shown, or *within the time* the parties to the suit in which such bill of exceptions is proposed to be filed, or their attorneys, may thereafter in writing agree upon, which said agreement shall be filed by the clerk in said suit and copied into the transcript of record when sent to the supreme court or courts of appeals."

By this section, it was the intention of the legislature to provide within what time all bills of exceptions should be filed. "At common law a writ of error lay for an error in law, apparent in the record, or for an error in fact, where either party died before judgment; yet it lay not for an error in law not appearing in the record; and, therefore, where the plaintiff or demandant, tenant or defendant, alleged anything *ore tenus*, which was overruled by the judge, this could not be assigned for error not appearing within the record, nor being an error in fact, but in law; and so the party grieved was without remedy." 2 Bacon's Abrid., tit. Bill of Exceptions, p. 112.

But, by the Statute of Westminster 2, in the thirteenth year of Edward the First, chapter 31, to remedy this hardship, it was provided, that "when one that is impleaded before any of the justices doth allege an exception, praying that the justices will allow it, which if they will not allow, if he that alleged the exception do write the same exception, and require that the justices will put to their seals for a witness, the justices shall so do."

It was held by the English courts that this privilege to a bill of exceptions was confined to civil cases, because of the language of the statute, and because it was thought that, if allowed in criminal prosecutions, it would be attended with great inconvenience because of the many frivolous exceptions that might be put in by prisoners to the delay of justice, and because the English judges were (theoretically at least) of counsel for the prisoner. *Sir Henry Vane's Case*, 1 Levinz, 68; *United States v. Gibert*, 2 Sumner, 19; *Case v. Com.*, 1 Va. cases, 264; *Ex parte Barker*, 7 Cow. 143.

As early as 1819 the statute of Virginia required all her courts of record to sign and seal bills of excep-

tions in criminal cases.   1 Rev. Code, 1819, ch. 133.

Although the statute of Westminster appointed no time within which the justices should put their seals to the bill, it was held by the common law judges that it should be reduced to writing at the time it was taken, not that it need be drawn up in form, but the substance must be put in writing whilst the thing was transacting, and this interpretation was generally adopted by the courts of this country, to the extent at least that such bills must be tendered and signed during the term and not later.

This construction was adopted by this court in 1841 in *Consaul v. Lidell*, 7 Mo. 250, under the statute of 1825, which was in all material respects a rescript of the statute of Westminster, and so remained until the revision of 1855.   But this court as early as the case of *Pomeroy v. Selmes*, 8 Mo. 727, so far relaxed the English rule as to say that if the parties consented of record, the bill might be presented at the next term, and this continued the rule of this court, until the revision of 1855, which provided that "such exceptions might be written and filed at the time or during the term at which they were taken *and not after.*"   And the law as thus amended remained unchanged until the act of 1885.   Acts, 1885, p. 214.   And yet, to adopt the language of Judge Norton, in *McCarty v. Cunningham*, 75 Mo. 279, notwithstanding the positive injunction of the statute that exceptions must be filed during the term at which they were taken, and *not after*, it was constantly held by this court that a bill of exceptions might be filed *after the expiration of the term,* provided the parties consented and the court so ordered.   Citing *West v. Fowler*, 59 Mo. 40; *Peake v. Bell*, 65 Mo. 224.

During the time from 1835 to 1885, cases were frequently coming to this court, in which the court had granted the leave, *without the consent* of record, *of the*

*parties* and the exceptions were ignored.   Of this class
are *Ellis v. Andrews*, 25 Mo. 327, and *West v. Fowler*,
55 Mo. 300, and the same case again in 59 Mo. 40.  On
the other hand, it often occurred, as in *McCarty v.
Cunningham*, 75 Mo. 279, and *Spencer v. Railroad*, 79
Mo. 500, that both parties consented, and yet because
the court had not made an order based upon that
mutual consent, the bills were either not considered, or
stricken out.   A very strict ruling was made in *State v.
Duckworth*, 68 Mo. 156.   In that case, the point was
made that the consent of the prosecuting attorney did
not appear; although the record recited his appearance
in open court in the cause, when the leave was given to
file the bill in vacation.

Notwithstanding these rulings members of the bar
continued to extend courtesies to each other and
extended the time for filing these bills beyond the term,
until the decision in *Rine v. Railroad*, 88 Mo. 392, by
BLACK, J., modified somewhat the rigor of *Cunningham
v. McCarty*, 75 Mo. *supra*, and *Spencer v. Railroad*, 79
Mo. *supra*, in that case Judge BLACK saying: "The very
fact that the court made the order sufficiently shows
its consent thereto, and the consent of the parties to
the suit is clearly expressed, for one asks the leave and
the other grants it."   Judge SHERWOOD concurring,
expressed his gratification, that *"the heresy had been
gibbeted at last,"* and said: "I was never able to see
how *any entry* of record could be made without the con-
sent of the court first had and obtained.   Such consent
is of necessity implied by the fact of the entry being
made.   *The entry of record showing consent of parties to
filing the bill of exceptions in vacation is all that is requi-
site."*

And thus stood the statute and the decisions, when
the legislature of 1885 met and amended the section by
striking out the words *"and not after,"* and inserting in

lieu thereof the words, "or within such time thereafter as the court may by an order entered of record allow." In *State v. Mayor*, 99 Mo. 602, it was held that the law as thus amended allowed the court to extend the time for filing the bill of exceptions beyond the term *with or without the consent of the opposite party*, but that it furnished *no authority to the judge to extend the time in vacation*. Happily for the profession, the decisions in *McCarty v. Cunningham* and *Spencer v. Railroad* directed the attention of the legislature to the illiberality of these provisions and brought the amendment of 1885.

When the revising session of 1889 met, a new practice had obtained in all of our circuit courts. Each court now had an official stenographer, from whose notes all bills of exceptions were to be made, and it was soon discovered that it was almost impossible for the stenographer to remain in the court room all day in our country circuits and report the causes, and still be able to transcribe his notes in each case during the term, or within a given number of days, hence. a more liberal provision *still* was made and resulted in section 2168.

Whatever may be the proper construction of the relation the several clauses of this section bear to each other, one thing may confidently be asserted, and that is, that as the section stands to-day, it is an expression by the legislature in favor of a more liberal practice in our courts. It is, or was intended to be, in complete harmony with the system that guarantees every man an appeal to the court of last resort, and that no mere accidental circumstance such as the unexpected adjournment of court, the sickness of the stenographer, the absence of the judge in a distant county, or other unforeseen accident, should deprive a man of his bill of exceptions, so long as the court, or judge was willing to extend the time, or his opponent was just enough to

stipulate that he should have the necessary time.

This is the trend of legislation in this state. The previous decisions of this court have admonished the legislature that the practice was not in keeping with the spirit of the age, and they have given us a statute that no longer calls for decisions like that in *The King v. Sir Henry Vane*, 1 Levinz, 68, in which the judges peremptorily refused to permit him to file his bill of exceptions, and the reporter laconically adds, *"and he was afterwards executed on Tower Hill by beheading only."*

The very conception of an appellate court necessarily involves some reasonable mode of enabling the parties to bring their exceptions to the rulings of the lower courts before the court of appeals. The legislature of this state has recognized that the discretion may be safely lodged with the trial judge to extend this time, either in term time or vacation, and they have also recognized that unforeseen accidents, or misfortune, or necessary delay of the stenographer may often render it impossible for the parties to reach the judge, especially in our country circuits; accordingly they have in my opinion empowered the parties themselves to extend the time by stipulations filed with the clerk. No one can certainly complain if the party who has the judgment is willing to wait, in a civil cause; and certainly our prosecuting attorneys can be presumed to guard the rights of the state vigilantly, a presumption obtaining in favor of all public officers, and one certainly strengthened by the repeated complaints of their zeal in prosecutions.

My analysis of the section is this: It provides, I think, for three different times within which a bill may be filed. *First,* "at the time, or during the term of the court at which it is taken;" or *second,* "within such time thereafter as the court may by an order entered of

record allow, which may be extended by the court or judge in vacation for good cause shown;" or *third*, "such exception may be written and filed," "*within the time* the parties to the suit in which such bill of exceptions is proposed to be filed, or their attorneys may thereafter agree upon, which said agreement shall be filed by the clerk in said suit, and copied into the transcript of record when sent to the supreme court or court of appeals." It seems clear to me that the subject of the section, and sentence, are the words, "such exceptions may be written and filed" and they are qualified by three distinct phrases separated from each other by the disjunctive "or."

Now, my learned brethren say that if the court or judge only *once* extends it, then the parties may themselves extend the time *thereafter*, *ad libitum*, without the sanction or approval of the court or judge. In other words, that his consent must be obtained to keeping open his record after the term. Well, if this reason actuated the legislature it is passing strange that they should ever have taken the matter out of his hands at all, which they most clearly did.

Much stress is laid upon the word "*thereafter*," in this third clause, but we do not think it such a serious matter. We think it could, and should, be read as far as this clause is concerned as follows: "Such exception may be written and filed at the time or during the term of the court at which it is taken * * * or within the time (thereafter) the parties to the suit in which such bill of exceptions is proposed to be filed, or their attorneys may in writing agree upon." By transposing the word "thereafter," in this manner, we give to it its full effect, as it is our duty to do, and leave it as effectual for the construction placed upon it by the majority as if it stood as now. But under neither reading can it be maintained that there is in the statute any

reason for making an order by the court, or judge *a condition precedent to the stipulation of counsel.* To import such a condition into it would be far worse than a mere transportation of a word, and would, in our opinion, thwart the very purpose of the law.

It must be borne in mind that this consent to extend the time in this case was filed in writing *in term time.* If the position of Judge SHERWOOD, in his concurring opinion in the *Rine case, supra*, that "the entry of record showing the consent of parties to filing the bill was all that was requisite," under the rigorous statute of 1879, was right, how much more liberal ought to be the construction of an *enabling remedial act like this.* In the *Spencer case*, 79 Mo. 500, the stipulation was in these words: "Now again on this day come the parties aforesaid, by their respective attorneys; and here in open court agree and consent that defendant have leave to file his bill of exceptions at any time during vacation up to and including the next term of this court." In the *Rine case*, that decision was condemned, under the statute before the present liberal provision. If that was sufficient then, we think the decision condemning the stipulation in this case, can hardly bear the criticisms of the bench and bar, in view of section 2168. Why, in the light of this age, and our liberal system of appeals, should these men be sent to the penitentiary without having their exceptions considered, in the face of such a statute as section 2168? We think the exceptions should be considered, and for that reason dissent. BLACK, C. J., concurs in my views.

SHERWOOD, J. *(concurring)*.—Considering the importance of the subject, the cases and the statutes which have been reviewed in the minority opinion, I

have deemed it best to add a few additional observations.

Our early statute touching the point in hand, as appears from statutes, 1835, was the following.

"Sec. 20. Whenever, in the progress of any trial, in any civil suit depending in any court of record, either party shall except to the opinion of the court and shall write his exception, and pray the court to allow and sign the same, the person or persons composing the court, or the major part of them, shall (if such bill be true) sign the same; and if they refuse to sign such bill on account that it is untrue, they shall certify thereon, under their hands, the cause of such refusal." Statutes, 1835, p. 464.

The statute as above set forth, remained the same in 1845. See Revised Statutes of Missouri of that year, p. 820, sec. 25.

The statutory rule thus laid down was, however, so far relaxed in practice that it was held that upon consent of parties, entered of record, the trial court might grant permission to file a bill of exceptions in vacation. This relaxation of the rule and its precise limits are accurately set forth in *State v. McO'Blenis*, 21 Mo. 272, and in *Mentzing v. Railroad*, 64 Mo. 25. Other cases speak of consent of parties entered of record to the filing of a bill of exceptions, but in a vague way; what they evidently mean is the rule as above indicated.

In 1849, under the provisions of the new code, it was provided that: "Exceptions may be taken to the opinions of the circuit court during the progress of any civil action, and bills of exceptions shall be allowed, signed, and made part of the record, in the manner as heretofore" (Laws, 1849, p. 93, sec. 6.); thus giving a legislative sanction to the prior rulings of this court on the point in hand.

Under the rulings aforesaid, of course the court was powerless to grant, by entry of record, permission to one of the parties litigant to file a bill of exceptions in vacation, unless with the consent of the adverse party; nor could such parties make any entry of record, *without the permission of the court.* Thus the law was until the revision of 1855, when the legislature made a change in the law as it then stood, by providing that: "Such exception may be written and filed at the time, or during the term of the court at which it is taken, and not after." R. S. 1855, p. 1264, sec. 28.

Notwithstanding this rigid and restrictive legislative provision, bills of exceptions continued, by permission of court and the consent of parties, to be filed in vacation as before. *Blankenship v. Railroad,* 48 Mo. 376; *West v. Fowler,* 55 Mo. 300; *Dinwiddie v. Jacobs,* 82 Mo. 195. Then, by some singular judicial aberration, it was solemnly decided by this court that unless the *consent of the trial court affirmatively appeared* to the order granting permission to file the bill of exceptions in vacation, no validity would attach to such bill thus filed, notwithstanding the record showed consent of both parties to the extension. *Spencer v. Railroad,* 79 Mo. 500, and cases cited.

Thus matters remained until the *Rine case* came up to this court for determination. 88 Mo. 392. There the entry showed that: "On motion of said defendant and by consent of plaintiff, leave is given said defendant to file bill of exceptions thirty days after this term." And it was seriously urged by plaintiff in that case, that "the record shows consent *only of plaintiff* for defendant to file its bill of exceptions in this case." But it was ruled that "the very fact that the court made the order sufficiently shows *its consent* thereto," etc. It was upon this basis that I made the remarks, in the concurring opinion, already attributed to me, in

which I distinctly recognized that *two* things were requisite in extending the time for filing a bill of exceptions: *First*, an order of record extending the time; *second*, which order should include the consent of the parties litigant as the groundwork in, and recitals of, such order. And that the consent of the court *ex vi termini*, was implied in the fact that the order was *made at all*.

As shown by some of the cases cited, and by many others, very often controversies over the validity of bills of exceptions arose because an order for extension of time was made by the court upon the application alone of the losing party, and without the consent of his adversary and such order was held invalid, and likewise the bill. *Mentzing v. Railroad*, 64 Mo. 25, and cases cited; *Dinwiddie v. Jacobs*, 82 Mo. 195.

In this posture of affairs the act of 1885 was enacted, which substitutes for the words quoted from the revision of 1855, this language: "Such exceptions may be written and filed at the time or during the term of the court at which it is taken, or within such time thereafter as the court may by an order of record allow." Laws 1885, p. 215. It will be noted that this change eliminates any necessity for consent of *parties*, but permits an extension of time to be granted to "such time thereafter as the court may by entry of record allow." The necessity of an order of court is distinctly recognized in the amendatory enactment, thereby ratifying previous decisions of this court on this subject, but modifying them only to the extent of obviating the consent of parties to the order of extension.

The case of *State v. Mayor*, 99 Mo. 602, was not determined until *after* the enactment of the section now to be noticed, and consequently could have had

no effect on legislation now to be commented on. In the revision of 1889, occurs this section:

"Such exceptions may be written and filed at the time or during the term of the court at which it is taken, or within such time thereafter as the court may by an order entered of record allow*, which may be extended by the court or judge in vacation for good cause shown, or within the time the parties to the suit in which such bill of exceptions is proposed to be filed, or their attorneys, may thereafter in writing agree upon, which said agreement shall be filed by the clerk in said suit and copied into the transcript of record when sent to the supreme court or courts of appeals." R. S. 1889, sec. 2168.

On the section just quoted I have placed an asterisk, indicating the end of the act of 1885, and the enlargement of that act is shown by the words which follow. From these premises, these things seem clear to my mind: That the legislature by including the former portion of the act of 1885 in the revision of 1889, intended to retain the provisions of the act of 1885 intact, so far as to make the *order of the court* the basis of any further extension of time which time might be further extended by the court or judge in vacation, for good cause shown, and that after the court by its order of record, in the first instance, had extended the time beyond the term, *then* the parties litigant or their attorneys, might *"thereafter"* grant further extension of time by an agreement in writing filed with the clerk, etc. Unless, as has been properly remarked, the adverb *"thereafter"* which means afterwards, or after that, does not refer to a previous extension of time granted by the court, then the term is "wholly meaningless." If, as is claimed, the adverb thereafter does not have a previous extension of time *as its predicate*, then the sentence thus construed is at war with all known rules

The State v. Ryan.

of grammar and logic, and leaves the parties litigant without any entry of record to determine in the dim and misty future the indefinite and nebulous *"there-after,"* when a stipulation in writing shall be filed, and when a bill of exceptions prepared. The act as it is, is sufficiently loose already in structure, without administering to it such a cathartic course of treatment, as the minority propose.

I have no conception what "the spirit of the age" has to do with construing the section of the statute now under discussion, as it is a commentator I have never yet consulted; nor do I see what relevancy in this investigation has the case of Sir Henry Vane, 1 Lev. 68, nor why it has been cited, except to compare the action of the court in *that* case, with the action of the majority in *this* one. I admit to feeling sorry for Sir Henry, in an historical sense, seeing that his trouble occurred *anno* 14 Car. II, A. D. 1662, some two hundred and thirty-one years ago; but as *I* read the record, he was not refused permission to *"file* his bill of exceptions," but the court refused to accept it, that is, to seal the bill thus tendered; and this was the correct ruling at that time, as to all *criminal* cases as shown by an unbroken line of English precedents.

But, considering the circumstances of that case, of the *then* and *now*, since comparisons seem to be in vogue, I think that the ruling therein may perhaps favorably compare with that in *Parker's case*, 106 Mo. 217, which was determined "in the light of this age," and under the full operation of the *"present liberal"* and *"remedial"* provisions of section 2168, where the time allowed poor Parker to "file his bill of exceptions," was limited to some *two hours*.

As to "the criticisms of the bench and bar," upon our ruling herein, it is enough to say that they possess no terrors for those who discharge what they conceive

to be their duty; if unjust they fall harmless; if just they are merited, and there is no escaping them, and, besides, there is ample time to file them in term or vacation, without order of court or consent of counsel.