## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

MARCH TERM, 1908.

*(Continued from Volume 130)*

### REYNOLDS, Appellant, v. SCHADE et al., Respondents.

St. Louis Court of Appeals, March 31, 1908.

1. **PRACTICE: Bill of Exceptions: Stipulation Extending Time: Order of Court.** Under the provisions of section 728, Revised Statutes 1899, after the court has granted an extension of time in which to file a bill of exceptions, the parties may, within that time, further extend the time by stipulation and it is not necessary that the court or judge in vacation shall make an order extending the time in accordance with the stipulation.

2. ———: ———: ———: **Filing Stipulation.** And it is not necessary in such case, if the stipulation is entered into before the expiration of the time theretofore extended, that the stipulation be filed with the clerk before the expiration of such prior extension; it is sufficient if the stipulation is filed after the expiration of such prior extension.

3. ———: ———: **Extending Time for Filing: Record Proper.** The rule that the extensions of time for filing bills of exceptions must be shown by the record proper, does not require that there should be an order of court extending the time, where the extension is made by stipulation; the stipulation for a second extension contemplated by section 728, Revised Statutes 1899, may be treated as a part of the record in the cause, though it is not incorporated in the bill of exceptions.

4. **PROMISSORY NOTE: Payment: Payment by Renewal Note.** The giving of a promissory note, and securing the same by a mortgage, for the balance due on a prior note, does not extinguish the old note unless it is agreed between the parties at the time that the new note shall operate as payment.

5. ———: ———: **Mortgages: Joint Maker.** The payment of a debt, secured by mortgage, by one of two joint debtors, extinguishes the debt and the power to enforce its payment by sale under the mortgage; this rule applies to a case where a husband and wife executed a note secured by mortgage, for such obligation imports that they are joint principals when nothing appears to the contrary.

6. ———: ———: ———: **Principal and Surety: Parol Evidence.** Parol evidence is admissible to show that one, who appears to be one of the joint makers of a promissory note, signed the same as surety, and where a wife's property is mortgaged for the debt of her husband, parol evidence is admissible to show that the debt secured was the debt of the husband.

7. ———: ———: ———: ———: **Payment by Surety.** Where a surety paid a debt secured by deed of trust for her principal and took an assignment of the debt and deed of trust, while such payment extinguished the debt so far as the creditor was concerned, the surety could enforce her right as assignee against the property mortgaged by causing the trustee to sell under the deed of trust.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*Wilson Cramer* for appellant.

The endorsement of the $3,000 note by Robert L. Taylor to Bettie D. Hempstead upon the payment of the note for $1,342.35 on July 2d, 1904, did not continue the note in force. The note was the joint note of Benjamin R. Hempstead and Bettie D. Hempstead, and the payment by either party extinguished the debt and canceled the note. 2 Parsons on Notes and Bills, p. 237; Williams v. Gerber, 75 Mo. App. 18.

*W. H. Miller* for respondents.

(1) At the very threshold respondent contends that there is no bill of exceptions in the case and therefore nothing here for review, except the record proper. The recital in the bill is not proof of the record and es-

pecially is this .true when the plain record is at variance with the allegations of the bill. Bick v. Williams, 181 Mo. 528; Powell v. Sherwood, 162 Mo. 605; Doherty v. Raba, 154 Mo. 365. (2) The time within which to file a bill of exceptions can at no time be extended by counsel without a written order of the court (either term time or vacation) made before the lapse of time first given. No written or even verbal order of the court is shown in this record at all. (3) Unless it be the vacation record made by the clerk, and that was too late. That entry recites a stipulation and not a court order or order of judge in vacation. Bushell & Glessner Co. v. Forman, 83 Mo. App. 70; Mitchell v. Williams, 79 Mo. App. 389; Maddox v. Railway, 73 Mo. App. 510; State v. Schumann, 133 Mo. 111; Dorman v. Cook, 119 Mo. 68. Stipulation of counsel standing alone is not sufficient, but must ripen into an order of court either in term time or vacation.

NORTONI, J.—The first question relates to an extension of time for filing the bill of exceptions. On the fifth day of September, 1905, and during the term, the court granted plaintiff ninety days from that date in which to file a bill of exceptions. The time thus granted would expire on the 4th day of December, 1905. During that time, and before its expiration, to-wit, on November 20th, counsel representing either party, entered into a stipulation, providing that plaintiff should have additional time for the filing of his bill of exceptions, which additional time should expire February 1st, 1906. Although this stipulation was executed as of date, November 20, 1905, plaintiff's counsel neglected to file it with the clerk, until December 18, 1905; that is to say, although executed within the time granted by order of the court for filing the bill of exceptions, it was not filed until after that time had expired. Respondent makes the point here that the bill of exceptions filed in

the case under the authority thus appearing, should be stricken from the files, for the reason that the stipulation was not filed with the clerk on or before December 4, 1905; that is, within the time extended by the order of the court. And further, that the stipulation by itself is insufficient to authorize the filing of the bill for the reason no order by the judge in vacation was entered thereon. It is said the stipulation must ripen into an order of the court in term or an order of the judge in vacation. It is very true that the stipulation providing for an extension of time in which the bill of exceptions may be filed, is not sufficient of itself unless it has been preceded by an order of the court first extending the time; but after the court has granted an extension of time, the statute then specifically authorizes the parties to further extend the time by stipulation. Such is the express provision of section 728, Revised Statutes 1899, section 728 Mo. Ann. Stat. 1906. And the question has been pointedly ruled and determined in State v. Ryan, 120 Mo. 88, 22 S. W. 486, 25 S. W. 351. See also State v. Wyatt, 124 Mo. 537, 27 S. W. 1096.

Now in this case the court had first extended the time to December 4th, by an order of record, and it was therefore entirely competent for the parties to further extend the same by agreement, as contemplated by the statute supra. As to the proposition that an order of the court in term time, or the judge in vacation must be entered upon such stipulation, or as suggested by counsel, that the stipulation must ripen into such an order, the question has been determined by the judgment of our court of last resort adversely to the argument advanced by respondent. In State v. Hilterbrand, 116 Mo. 443, 22 S. W. 805, it will be observed, by reference to the Attorney-General's brief, that the identical argument was urged upon the Supreme Court. The time had been further extended by stipulation for filing the bill of exceptions in that case and no order of the court

in term nor of the judge in vacation appeared to have been entered in affirmance of the stipulation on file.

Notwithstanding the argument of the Attorney-General mentioned, in the opinion given, the court said such was an erroneous view of the statute; that it was entirely competent for the parties litigant, during the time theretofore extended by the court, to further extend the time for filing the bill by stipulation to that effect. The import of the ruling manifestly is that no order of the court in term, nor of the judge in vacation, is essential on such stipulation when validly entered into between parties before the expiration of the time theretofore granted for filing the bill. And so too, it appears by reference to the Attorney-General's brief in connection with the opinion of the court in State v. Wyatt, 124 Mo. 537, that the identical question was urged upon the Supreme Court a second time and repudiated curtly, and without elaboration.

As to the proposition that the stipulation must not only be entered into prior to the expiration of the time theretofore extended, for the filing of the bill, but that it must be filed with the clerk as well within that time, it is sufficient to say that the question with respect to the date of its filing has been ruled adversely to respondent's argument in Monarch Rubber Co. v. Bunn, 78 Mo. App. 55. The statute involved was construed in that case. It was said that while the statute requires the agreement to be made before the time granted had expired, it does not require that it shall be filed within that time. We also have carefully considered the statute with respect to this matter and feel that the judgment given by the Kansas City Court of Appeals in the case last cited is entirely sound. Indeed, there is nothing appearing in section 728, Revised Statutes 1899, referred to, which requires such stipulation to be filed prior to the expiration of the time mentioned. Indeed, in many instances such stipulations are not entered into until

the very last day of the time granted, it not appearing until then that it is impossible to complete the bill; and where the parties are far removed from the office of the clerk in which the stipulation should be filed, the wholesome purpose of the statute would be defeated by a construction which would require the stipulation to be filed within the time mentioned.

Authorities are cited by respondent and arguments submitted in support of the proposition that it must be exemplified to this court by the record proper, or the abstract thereof when the case is here on short form, *aliunde* bill of exceptions, to the effect that the several extensions for filing the bill were granted each before the last preceding extension had expired. And indeed such is the well settled law. The argument advanced from this premise is that there must be an order of the court based on the stipulation mentioned, otherwise there could be no order or abstract thereof shown *aliunde* the bill of exceptions as to such extension of time. We are persuaded the learned counsel has overlooked the express provisions of the statute, section 728 supra, with respect to the stipulation being considered. Now while it is true that stipulations, like motions, are usually preserved in the bill of exceptions, which ordinarily is the proper repository therefor, it seems the statute, section 728, which authorizes the stipulation now under consideration, contemplates that it shall be treated by the clerk and appellate court as parts of the record in the cause, for it makes no provision as to its exemplification on appeal in the bill of exceptions; while on the other hand, it expressly provides that it "shall be filed by the clerk in such suit and copied into the transcript of record when sent to the supreme court or courts of appeals." Learned counsel for appellant in this case has set the stipulation out in full as parcel of his abstract, treating it as the statute contemplates, as a proper paper to be incorporated into the trans-

cript of record. From this abstract on file it appears clearly that the agreement for an extension of time to February 1, 1906, was made on November 20, 1905, and within the time extended by the court, which expired on December 4th. These facts appearing, the record is sufficient, even though the stipulation was not filed until December 18, 1905, and after the time theretofore extended had expired.

2. The suit is in equity, seeking to enjoin the sale of certain real estate advertised under the provisions of a deed of trust. The defendant Schade, as Sheriff of Cape Girardeau County, had advertised the property for sale, as substituted trustee under a competent provision to that effect in the deed. It is alleged in the bill that the debt evidenced by the note, described and secured in the deed of trust, had been fully paid off and discharged prior to the date on which the trustee advertised the property for sale, and that the power of the trustee to sell thereunder as for default in payment, was thereby extinguished. A temporary restraining order was issued in accordance with the prayer of the bill. Upon a hearing of the case, however, the court sustained the defendant's motion to that effect and dissolved the injunction. Plaintiff appeals.

It is insisted upon the part of plaintiff, that the proof showed beyond controversy, the debt described in and secured by the deed of trust, had been paid prior to the advertisement of the property and the court therefore erred in refusing to decree the injunction perpetual. A proper solution of the question thus presented, involves an examination of the facts in proof which will be stated *in extenso*. On the 13th day of January, 1896, the plaintiff Reynolds and one Hempstead were tenants in common of a certain lot of ground in the City of Cape Girardeau. Plaintiff Reynolds owned a three-fourths interest in this lot, and Hempstead a one-fourth interest therein. On that day Benjamin R. Hempstead

and his wife, Bettie D. Hempstead, borrowed $3,000 from the defendant Taylor and executed their joint promissory note therefor.    Contemporaneously with this transaction, and for the purpose of securing the payment of said note, they executed a certain deed of trust on their one-fourth interest in such lot of ground, and also on certain other property owned by them, whereby they conveyed their interest therein to one Faust, as trustee, to the use and benefit of defendant Taylor, the holder of the note.  The deed of trust was duly recorded, January 15, 1896.  A few months thereafter, the plaintiff Reynolds instituted a suit in partition against his cotenant Hempstead, to partition the lot of ground mentioned.  Reynolds had no personal knowledge of the outstanding deed of trust on the one-fourth interest of Hempstead, and having failed to examine the records therefor, the trustee therein was not made a party to the partition suit.  The partition suit proceeded to judgment, and the lot was sold by the sheriff.  At the sheriff's sale in partition, plaintiff Reynolds became the purchaser of the entire interest in the lot; that is to say by this purchase he succeeded to the rights of Hempstead, as well as his own, and paid the purchase price for Hempstead's one-fourth interest to the sheriff for Hempstead; that is to say, he became the owner of Hempstead's one-fourth interest in the lot, subject to the outstanding deed of trust for three thousand dollars, for the use and benefit of defendant Taylor; the trustee in that instrument not having been a party to the partition suit.  The indebtedness of Hempstead against the one-fourth interest in the lot continued for several years, and on December 9, 1899, Taylor, the holder of the note, caused the property other than the one-fourth interest in the lot mentioned, and included in the deed of trust, to be advertised and sold to satisfy the debt secured thereunder. At this sale Mrs. Bettie D. Hempstead, whose name ap-

pears on the note with that of her husband, became the purchaser at the price of $1875. This amount was paid by her and credited upon the $3,000 note, leaving a balance due thereon of $1,342.35, which after the sale of the property last above mentioned, remained secured by the deed of trust on the one-fourth interest of the lot only. A few days thereafter Taylor demanded other and additional security for the amount unpaid. Hempsteap and wife thereupon executed to him a new note, for $1,342.35, and a new deed of trust covering the property which Mrs. Hempstead had bought in a few days before at the trustee's sale, and included therein as well the one-fourth interest in the lot of ground mentioned, which of course, they no longer owned, their interest having been sold out, under the partition judgment above referred to. While plaintiff and others say that Taylor told them the $3,000 note was entirely paid by the transaction, whereby Mrs. Hempstead paid Taylor $1,875 and executed a new note and deed of trust for $1,342.35, Taylor himself and Hempstead insist otherwise. They say that the $1,875 resulting from the sale of that portion of the property under the original deed of trust, other than the one-fourth interest in the lot, was credited upon the $3,000, and the new and additional note for $1,342.35 and deed of trust given on the same property, three days thereafter, was intended, instead of payment of the balance due on the $3,000 note, to be held by Taylor as collateral security, for the payment of that amount, which then remained unpaid. In view of this evidence, it is certain the court cannot declare conclusively, as a matter of law, that the taking of the note operated as a payment of the balance due, and extinguished the old note, as appellant's counsel insist should be done, for it is settled that such a result, does not follow unless it is understood and agreed between the parties at the time that the transaction by which the new note is given shall operate payment of

the pre-existing debt. [Sturdevant Bank v. Peterman, 21 Mo. App. 512.] Both Taylor and Hempstead maintain that the old note was not paid; that the new note and deed of trust was to be held by Taylor as collateral to the old note, and that he continued to hold the old note as its owner. They say Mrs. Hempstead paid Taylor thereafter five hundred dollars on the old note, at one time, and finally, on July 6, 1904, paid the amount of principal and interest then due, and that he endorsed or assigned the $3,000 note to her, without recourse on him and surrendered the $1,342.35 note and deed of trust which he held as collateral. Their evidence tends to prove that by these transactions Mrs. Hempstead became the equitable owner at least of the $3,000 note, and was such owner at the date the property was advertised for sale a few weeks thereafter, when this suit was directed against it. The plaintiff insists, upon this proof, that the court should have given judgment for him, and perpetually enjoined the sale under the deed of trust. The argument advanced is that even though the payment of the $1,875 and the execution of the $1,342.35 note and deed of trust in December, 1899, did not operate an extinguishment of the original debt described in the deed of trust, the payment of the balance due by Mrs. Hempstead, one of the joint makers of the note, on July 6, 1904, was in fact payment of the last vestige of the original indebtedness to Taylor, and operated its entire extinguishment as a matter of law. It is true this act did discharge the indebtedness to Taylor, who says it was not a payment, however; that while it discharged the debt, in so far as he was concerned, he assigned the note to Mrs. Hempstead. It is no doubt true as between those having notice thereof, the payment of the debt described in the deed of trust will operate to extinguish the power of the trustee to sell the land so as to defeat the title attempted to be conveyed by him thereunder; that is to say, the extin-

guishment of the debt extinguishes the power of sale to enforce its payment. [Wells v. Estes, 154 Mo. 291, 55 S. W. 255.] And it is no doubt true as a general proposition of law, that the payment of the debt or obligation by one of the joint debtors is an extinguishment of the debt or note. [Williams v. Gerber, 75 Mo. App. 18; 2 Parsons on Bills & Notes, p. 237; 4 Am. & Eng. Enc. Law (2 Ed.), 497.]

The $3,000 note is signed by Benjamin R. Hempstead and Bettie D. Hempstead. Nothing appears on its face indicating whether one or the other of these signers were principals or sureties. From the fact that nothing appears to the contrary, it imports a joint obligation in which both Hempstead and his wife are principals. For the converse of the proposition see Reissaus v. Whites, 128 Mo. App. 135, 106 S. W. 603. In this view of the case, the payment of the balance due on July 6, 1904, by Mrs. Hempstead, no doubt operated an extinguishment of the debt secured in the original deed of trust, and thereby terminated the power given in the deed, to sell for default in its payment. If such appeared to be the whole case, it would be entirely proper to give judgment here, remanding the cause with directions to enjoin the sale. The mere fact that the note on its face imports a joint undertaking in which both of the Hempsteads are principal parties is not conclusive upon them, however, if either one be a surety for the other; that is to say, if in truth one was the principal debtor and the other the surety. While it is usually the province of the court to declare the legal effect of a written instrument in evidence, and it is likewise true that the general policy of the law forbids the reception of oral testimony to vary or alter the terms of a writing, these rules do not preclude the introduction of parol to explain the relationship of parties to an undertaking for the purpose of determining the equities which should obtain between those whose

names are affixed to the instrument. The doctrine is that parol evidence may be received both in equity and at law, for the purpose of establishing that one or more who appear to be joint makers signed the instrument as surety or sureties for the other. It proceeds upon the theory that suretyship is a fact collateral to the contract, rather than a part of it, and may therefore be shown *ore tenus.* [27 Am. & Eng. Enc. Law (2 Ed.), pp. 434, 435, 436; Brandt on Suretyship (3 Ed.), sec. 251.] And unless to do so contradicts the express terms of the instrument, which is forbidden (McMillan v. Parkell, 64 Mo. 286), one appearing on the face of the note as maker, as in the case at bar, may show by parol, that he or she is in fact a surety. [Scott v. Bailey, 23 Mo. 140; Mechanics Bank v. Wright, 53 Mo. 153; Coats v. Swindle, 55 Mo. 31; O'Howell v. Kirk, 41 Mo. App. 523; 27 Am. & Eng. Enc. Law (2 Ed.), pp. 434, 435, 436; Brandt on Suretyship (3 Ed.), sec. 38.] And so, where the wife's property is mortgaged for the debt of her husband, the wife may show that the debt secured was that of the husband, for which she and her property stood as surety, and thus avail herself of the rights and equities which obtain with respect to that relation. [Brandt on Suretyship (3 Ed.), sec. 44; Barrett v. Davis, 104 Mo. 549, 16 S. W. 377; 27 Am. & Eng. Enc. Law (2 Ed.), 223, 224.]

Now it appears from the record the defendant sought to prove that the $3,000 debt secured by the deed of trust was the debt of the husband, Benjamin R. Hempstead, that his wife Bettie D. Hempstead was surety therefor only, and that she paid the same as his surety and took an assignment thereof. On objection of plaintiff, the court rejected this evidence. This proof should have been received. On the question thus sought to be elucidated depends the proper solution of the controversy; for if Mrs. Hempstead paid the note as surety for her husband, the security held by the creditor Tay-

lor inured to her benefit as a matter of course and she was then entitled to be subrogated to his rights in the deed of trust and to reimburse herself by the sale of these securities; that is, by a sale of the lot under the provisions of the deed of trust. Although payment by the surety may have extinguished the debt so as to preclude action at law looking to reimbursement of the surety on the original obligation, without more (Williams v. Gerber, 75 Mo. App. 18; Hull v. Sherwood, 59 Mo. 172; Bank v. Kemble, 61 Mo. App. 215; M'Daniel v. Lee, 37 Mo. 204; Harper v. Rosenberger, 56 Mo. App. 388), there can be no doubt as to the equitable principle available to preserve her rights. And indeed, the doctrine in Missouri is that upon the surety paying the debt of the principal, under such circumstances, while it extinguishes the debt, in so far as the creditor is concerned, it operates as an equitable assignment not only of the securities, but of the debt as well, to the paying surety, when such appears to be the intention of the parties. [Berthold v. Berthold, 46 Mo. 557; Heim Brew. Co. v. Jordan, 110 Mo. App. 286, 85 S. W. 927; Furnold v. Bank, 44 Mo. 336; Benne v. Schnecko, 100 Mo. 250-257, 13 S. W. 82; Campbell v. Pope, 96 Mo. 468, 10 S. W. 187; Seely v. Beck, 42 Mo. 143; McCune v. Belt, 38 Mo. 281; Miller v. Woodward, 8 Mo. 169; Harper v. Kendle, 65 Mo. App. 515; Harper v. Rosenberger, 56 Mo. App. 388; George v. Sommerville, 153 Mo. 7; 54 S. W. 491; Schell City Bank v. Reed, 54 Mo. App. 94; Kingman Co. v. Cornell, 150 Mo. 282, 51 S. W. 727; 27 Am. & Eng. Enc. Law (2 Ed.), pp. 206-210, 213, 214; Brandt on Suretyship (3 Ed.), secs. 346, 347.]

Now this is a proceeding in equity. The court had jurisdiction to administer complete relief and if no more appeared than that Mrs. Hempstead paid the debt as surety for her husband, the court could have ordered the pleadings amended and administered such relief looking to the protection of her rights as was compat-

ible with the equities of the case. It appears, however, that upon paying the note Mrs. Hempstead caused the same and the deed of trust incident thereto to be assigned to her. Now such was entirely competent. The mere fact that she was surety would not preclude her right to a valid assignment of the note, to the end that she might enforce the security identically as the creditor could. This proposition is certainly true, even though she did not take the legal title to the note in the sense essential to the maintenance of a suit at law on the original obligation. As to that she was competent to receive at least an equitable title to the note and deed of trust on the theory that the lands conveyed in the deed of trust is the primary fund to be employed in the payment of the debt, and the equitable title is sufficient to sustain her right in the present controversy. That is to say, as the equitable owner of the debt, it was competent for her to enforce the security by causing the trustee to sell the legal title to the lands under the provisions of the deed of trust. Indeed, as said before, while payment by her operated to extinguish the debt insofar as Taylor, the creditor was concerned, it did not extinguish the debt so as to defeat such equities and rights which inured to her as incident to the relation of surety. It is well settled that under such circumstances a valid assignment of the debt and security may be made by the creditor to the surety when such is the intention of the parties, and that such securities may be enforced by foreclosure sale or otherwise on the part of the surety, identically as a creditor could have enforced them. [Lewis v. Palmer, 28 N. Y. 270; Norton v. Soule, 2 Greenl. (Me.), 341; Beaver v. Slanker, 94 Ill. 175; Brown v. Kirk, 20 Mo. App. 524; Orrick v. Durham, 79 Mo. 175-180; Schell City Bank v. Reed, 54 Mo. App. 94-97; Brandt on Suretyship (3 Ed.), sec. 347.] It therefore appears that if Mrs. Hempstead was a principal debtor, the payment by her extinguished

the debt and thereby terminated the power of sale in the deed of trust. This being true, the sale should have been enjoined. If, on the other hand, Mrs. Hempstead was surety and paid the note as such, taking an assignment of the debt and securities, she was entitled to enforce the provisions of the deed of trust by selling the property through the office of the trustee at public vendue, identically as the creditor Taylor, or any other holder of the note for value, could have done. To the end that the court may hear the evidence and determine the question of suretyship involved, together with the other phases of the controversy, the judgment will be reversed and the cause remanded. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.