## Andrew Crawford v. William Edwards and others.

*Deeds: Agreement to assume and pay mortgage: Acceptance: Grantee: Personal liability.*   The acceptance by the grantee of a deed conveying lands subject to a specified mortgage, and providing that he shall assume and pay said mortgage, binds him as effectually as though the deed were *inter partes*, and executed by both grantor and grantee; and such a proviso in a deed is to be treated, after acceptance by the grantee, as an express agreement on his part to assume and pay the mortgage specified.

*Vendee assuming and agreeing to pay mortgage: Personal liability: Mortgagee: Foreclosure.*   The obligation of a purchaser who, in and by such

CRAWFORD v. EDWARDS.

an agreement in the deed he accepts, assumes and agrees to pay a speci-
fied mortgage, enures in equity to the benefit of the mortgagee, who
may enforce it against such purchaser in a bill to foreclose his mort-
gage.

*Mortgage foreclosures: Agreement to assume and pay mortgage: Principal
debtor.* The mortgagee may treat both the mortgagor and his grantee
under such a promise as principal debtors, and may have a personal
decree against either or both; and this upon the principle that the cred-
itor is entitled to the benefit of all collateral obligations for the payment
of the debt.

*Grantee under obligation to pay mortgage: Defenses: Title: Mistake: Fraud.*
A grantee who has accepted such a deed cannot avoid liability under his
agreement to pay the mortgage, on the ground that by reason of a mis-
take in the description of the premises he acquired no legal title, where
he obtained possession under his deed of the proper premises, and the
right by virtue thereof to have the mistake corrected, but instead of
availing himself of that right permitted the premises to be fraudulently
conveyed and delivered to a third person in order to cut off the mort-
gage.

*Deeds: Agreement to assume and pay mortgage: Defenses to mortgage.* Nor
is he at liberty to show in defense that the mortgage he has assumed
and agreed to pay was without consideration, and therefore not a valid
claim against his grantor; the latter having seen fit to waive any defense
he may have had to the mortgage, and having appropriated a portion of
the purchase price coming to him to the payment thereof, his grantee is
precluded from assailing its validity.

*Submitted on briefs January 7.    Decided April 5.*

Appeal in Chancery from Berrien Circuit.

The bill sets forth that one John T. Edwards on April
23, 1866, conveyed to one Orrin Goodrich a piece of land
in Berrien county, Michigan, described as follows: Com-
mencing twenty rods south of the northwest corner of the
southwest quarter of the southwest quarter of section thirty,
in town four south, of range eighteen west, thence south
twenty rods, thence east eighty rods, thence north twenty
rods and thence west eighty rods to the place of beginning,
containing ten acres of land; that Goodrich mortgaged the
same back to Edwards to secure the payment of sixteen hun-
dred dollars of the purchase price, and immediately took
possession of the premises; that the deed was recorded, but
the mortgage was not; that on October 1, 1867, it having
been ascertained that the boundaries had not been properly
described, it was arranged that Goodrich should deed back
and Edwards should convey in lieu thereof nine acres of
said land, viz.: Commencing twenty rods and three and

three-eighths links south of the northwest corner of the southwest quarter of the southwest quarter of said section thirty, thence south four and sixty-nine and one-third one-hundredths chains, thence east nineteen and nineteen one-hundredths chains, thence north four and sixty-nine and one-third one-hundredths chains, and thence west nineteen and nineteen one-hundredths chains to place of beginning; that Goodrich accordingly did deed back and the deed was recorded, and that Edwards and wife thereupon gave a warranty deed to Goodrich, dated November 2, 1867, and intended to cover the premises last above mentioned, but by mistake the initial point was described as twenty rods and three and three-eighths links south of the northwest corner of the southwest quarter (instead of the southwest quarter *of the southwest quarter*) of said section thirty, etc.; that Goodrich thereupon made a new note for the sixteen hundred dollars, and to secure its payment made a new mortgage, dated November 2, 1867, designed to cover the same nine acres, but that by mistake this mortgage described the premises the same as in the deed last aforesaid, except that the south boundary was omitted altogether; that this mortgage was recorded; that Edwards on November 25, 1867, assigned this mortgage to one Green, who assigned to complainant; that in 1868 Orrin Goodrich died intestate, and his estate has never been administered upon; that in December, 1868, his heirs deeded to his widow, Alsina Goodrich, by a description like that in the deed of November 2, 1867, and she, by like description, deeded, January 7, 1869, to her son-in-law, Jakeway, subject to aforesaid mortgage, which he assumed and agreed to pay; that both these deeds were recorded; that on October 30, 1869, Jakeway and wife and Alsina Goodrich deeded by the same description to William Edwards subject to the mortgage, which he assumed and agreed to pay, and that this deed was recorded. The bill also avers that the possession originally taken under the first deed, of the premises intended to be conveyed, was maintained under all these conveyances and finally transferred to said William

CRAWFORD v. EDWARDS.

Edwards, who having bargained and sold the same, and having then discovered the mistake in the aforesaid conveyances, caused the same to be conveyed by a proper description by said John T. Edwards to one Brown for three thousand one hundred dollars on December 10, 1869, and that Brown mortgaged the same back to said William Edwards for nine hundred and sixty-five dollars; that Brown, on April 13, 1870, conveyed the same, subject to said mortgage of nine hundred and sixty-five dollars, to Sabra Adams, wife of Walter H. Adams, who is now in possession. It also charges that Brown and the Adamses had notice of the mistake in said conveyances, and of the existence of complainant's mortgage, and that said William Edwards had assumed to pay the same; and it alleges that said mortgage is past due and remains unpaid. The prayer is for an accounting of the amount due on complainant's mortgage and for a reformation of the description of the premises therein, and also in the deed from Edwards to Goodrich; and that if said Adams should be found to have purchased with notice of complainant's mortgage, the premises as rectified be sold for the satisfaction thereof; but if not, and if said mortgage of nine hundred and sixty-five dollars be still due and unpaid and belonging to said William Edwards, that it be foreclosed for complainant's benefit, and that said William Edwards be decreed to pay the balance due to complainant; and that if said nine hundred and sixty-five dollar mortgage be held by a *bona fide* purchaser, said William Edwards be decreed to pay the amount found due to complainant; and also for general relief.

The defenses set up, as well as the facts established by the proofs, are sufficiently stated in the opinion. On the hearing below, the bill was dismissed, and the complainant appealed.

*Potter & Potter* and *George W. Shaw*, for complainant.

*F. Muzzy*, for defendants.

MARSTON, J:

Orrin Goodrich .during his lifetime was liable, and after his decease his estate was subject, to the payment of the sixteen hundred dollar mortgage of .November 2, 1867. There can be no question but that there was a mutual mistake made in describing the nine acres of land intended to be conveyed in the second deed from John T. Edwards to Mr. Goodrich. Goodrich, at the time this second conveyance was executed, was in the actual possession of the land under his first deed, in which it was properly described, and he remained in possession, after receiving the second deed, until the time of his death in 1868. After this his widow and heirs, and their grantees, continued in possession claiming under the deed of November 2, until the conveyance of October 30, 1869, to William Edwards. No mistake up to this time had been discovered, or if it had, it was not known to any of the heirs or grantees of Orrin Goodrich. There can be no doubt, therefore, but that up to the time (December 10, 1869) when John T. Edwards conveyed by proper description these lands to Francis P. Brown, the parties interested might, upon discovering the mistake, have had it corrected.

Alsina Goodrich, the widow of Orrin, was interested in having this one thousand six hundred dollar note and mortgage paid. At the time she conveyed the premises to her son-in-law, Jakeway, a clause was inserted in the deed by which he assumed the payment of this mortgage, and he also bound himself not to sell the land without the consent of Mrs. Goodrich, during her lifetime. Upon the 30th day of October, 1869, Jakeway, then claiming to own this property, and being in possession, conveyed the same to William Edwards, Mrs. Goodrich joining in this conveyance. The consideration expressed in this deed was twenty-five hundred dollars, and it is conceded the property was worth that amount. That deed contained this clause: "This conveyance is made subject to a certain mortgage of sixteen

hundred dollars ($1,600 00) executed by Orrin Goodrich to John T. Edwards, and supposed to be dated April 4, 1866, which the party of the second part hereby assumes and agrees to pay as part of the above consideration." Passing for the present all question as to the acceptance of this deed by William Edwards, as well as the mistake in the description, what new rights and liabilities were created by this clause inserted in the deed?

The acceptance of such a deed binds the grantee as effectually as though the deed had been *inter partes*, and had been executed by both grantor and grantee.—*Trotter v. Hughes, 2 Kernan, 78.*

This must be treated, therefore, as an express agreement on his part to assume and pay that mortgage. It is more than a case of a conveyance of mortgaged property subject to the mortgage. In such a case the property would be made primarily liable for the debt, but the grantee would not have assumed, and would not be personally liable for its payment. Here, however, he expressly assumes and agrees to pay the mortgage, and that irrespective of the value of the land covered by the mortgage. The amount of the mortgage is deducted from the consideration which he otherwise has assumed to pay for the land. That amount he has retained in his hands for that express purpose. His grantor, whose duty it was to pay, might have insisted upon payment to him of the entire consideration, and paid it himself. By permitting his grantee to deduct this amount from the consideration and retain it, he has thereby rendered himself less able to meet the obligation, thereby reducing the mortgagee's personal security, but has at the same time to a corresponding amount aided the other to meet it.

Why then should not the grantee be held personally responsible to the mortgagee for the amount which he has thus assumed and agreed to pay? It is no injustice to the grantee to require him to pay it, because he has been permitted to deduct and retain that amount from the agreed

consideration and value of the land. The consideration he agreed to pay at the time he made the purchase, should be paid by him at the time and in the manner agreed upon, and there is nothing inequitable in requiring him so to do.

The obligation of the purchaser, when he assumes and agrees to pay the debt, enures in equity to the benefit of the mortgagee, who may enforce it against the purchaser, in a bill to foreclose his mortgage.—*Blyer v. Monholland*, 2 *Sanf. Ch.*, *478*.

It was said in *Earl of Belvidere v. Rochfort*, cited in *Hoff's Appeal*, *24 Pa. St.*, *205*, "The plain intent of the deed was to put the purchaser in the place of the vendor, and that he might not be longer liable to the mortgagee, a sufficient part of the purchase money was left in the purchaser's hands for satisfaction of the mortgage, the purchaser thereby taking upon himself the vendor's bond and covenant for payment of the mortgage as fully as if he himself had covenanted to pay it off. And either the vendor or mortgagee might, upon that contract, have compelled him to pay it off." Of course the vendor would not be discharged upon his grantee's making such a promise, except at the option of the mortgagee. The mortgagee may treat both the vendor and his grantee as principal debtors to him, and have a personal decree against either or both.—*Corbett v. Waterman*, *11 Iowa*, *86*; *Thompson v. Bertram*, *14 Iowa*, *476*; *Curtis v. Tyler*, *9 Paige*, *435*; *Halsey v. Reed*, *9 Paige*, *451*. These last cases also hold that the grantee under such a promise would be liable to have a personal decree rendered against him under the statute of that state, which is similar to § *5150* of our *Comp. Laws*.

The principle upon which this rests is, that the creditor is entitled to the benefit of all collateral obligations for the payment of the debt, which a person standing in the name of a surety for others has received for his indemnity, and to relieve him or his property from liability for such payment.

In addition to the authorities cited, see *Marsh v. Pike*,

*10 Paige, 595; Burr v. Beers, 24 N. Y., 178; Converse v. Cook, 8 Vt., 164; Hoff's Appeal, 24 Pa. St., 200; Lennig's Estate, 52 Pa. St., 138; 2 Wash. on Real Pr., 193 (571).*

Defendant William Edwards says he did not accept of this deed, and had no knowledge that there was any such agreement on his part contained therein, until after the commencement of this suit, and that as he obtained no title to the premises in question, on account of the mistake in the description, even had he accepted of the deed and so agreed, he ought not to be held responsible.

His answer and the testimony in the case shows clearly, that he knew Orrin Goodrich, and those claiming through and under him, had been in the actual possession of this property from April, 1866, to October, 1869, claiming to be the owners thereof and to have acquired title thereto from his brother John T. Edwards; that a mortgage had been given to John T. Edwards by Orrin Goodrich for a part of the purchase money, which was outstanding and unpaid; that as they were unable to pay this indebtedness, John T. was desirous of purchasing their interest in the premises; that the parties who were to make the conveyance would take defendant William Edwards' note for nearly the entire consideration to be paid; that he then inquired of John T. whether there were any mortgages or encumbrances on the land, and was informed than there was no incumbrance that would trouble him. He thereupon delivered his note to John T., payable to Alsina Goodrich, for the amount agreed upon, "with which he supposed said John T. Edwards intended to purchase the interest of said Alsina Goodrich and Gaudier F. Jakeway and wife, in and to said land, and take a deed in this defendant's name, as a security to him, and turn the same to the best account he could in payment of his debts." At the time he gave this note he says he supposed he was to receive a deed of the premises in question. He claims to have had no knowledge whatever, and that he was not consulted at all, about the sale and conveyance by

33 MICH.—46.

John T. by correct description to Brown. . Yet at the time of this conveyance a mortgage was executed by Brown to William Edwards for nine hundred and sixty-five dollars,— part of the purchase money. This mortgage he accepted, retained, and collected a portion thereof.

There are other· strong facts and circumstances in the case tending to show that William Edwards knew what was being done; that a deed was to be made to him of the premises, and that he expressly agreed, before the deed was drawn, to assume and pay this mortgage. I am satisfied from a careful reading of the evidence that William Edwards knew of the conveyance to himself, of the mistake, and of the conveyance by correct description to Brown; that there was an object in all this which would not bear inquiry and investigation, and, to put it in the mildest form, that he studiously closed his eyes to what was going on, omitted to make inquiries, when he should have made them, was willing that others should manage the business, he being a· mere instrument in their hands.

I am of opinion, therefore,.that he is entitled to no protection upon the ground of ignorance of what was going on, or because he did not accept this deed. Under the circumstances it is too late, and comes with rather bad grace, to disclaim having any knowledge that a conveyance was made to him. I am also of opinion that under the circumstances in this case William Edwards is in no position to avoid liability under his agreement because on account of the defective description he obtained no title under that deed. It is true that he acquired no legal title thereby, but he obtained possession of the premises. He obtained the right under his deed to have the mistake corrected, and if he did not avail himself of that right, but permitted a conveyance to be made direct from John T. to Brown in order to cut off this mortgage, he must not expect a court of equity to step in, sanction and complete the transaction thus fraudulently commenced, in order that he may be the gainer thereby.

CRAWFORD *v,* EDWARDS.

Defendant William Edwards further insists that, on account of the mistaken description in the deed from John T. to Orrin Goodrich, there was a failure of title, therefore no consideration for the note for the purchase money which this mortgage was given to secure; that Orrin Goodrich, if living, would not be, and his heirs for the same reason are not liable on that note, and that he is entitled to the benefit of this defense.

A similar theory was set up in *Comstock v. Smith, 26 Mich., 321,* but held no defense. That case disposes of this question.

I am of opinion that the decree of the court below should be reversed, and a decree rendered in favor of the complainant and against the defendant William Edwards, for the amount due upon the sixteen hundred dollar note of November 2, 1867, with costs of both courts, and that complainant have execution therefor.

The other Justices concurred.