## CURRY, Respondent, v. LAFON, Appellant.

### St. Louis Court of Appeals, October 20, 1908.

1. **FRAUD: Secret Profits by One of Two Co-Adventurers.** The taking of secret profit by one of two purchasers of real estate, who gave their joint notes for a part of the purchase price, was contrary to public policy and a suit by one of the co-makers on one of such notes, which he had acquired by a secret arrangement profitable to himself, brought against the other co-maker for contribution could not be maintained.

2. **MORTGAGES: Assumption of Indebtedness by Purchaser: Estoppel: Fraud.** Where one of two owners of real estate, for which they had given their joint note secured by mortgage on the real estate for part of the purchase price, received from the other owner a deed to the latter's half interest in which deed the grantee assumed the payment of the notes secured by their joint mortgage, such grantee when sued on one of the notes by the other maker, who had previously acquired the same, was estopped by the covenant of assumption to show in defense that the note was void as against public policy in the hands of the plaintiff on account of a secret and profitable arrangement whereby the plaintiff had acquired it, such arrangement being fully known to the grantee at the time of the assumption.

3. ———: ———: **Merger.** The doctrine of merger, whereby the entire estate is merged by uniting in the same person both the legal and equitable title to real estate, applies where this union in the same person takes place without any intervening right to prevent the operation of the merger; where one of two owners of an equity of redemption in real estate encumbered by a mortgage acquires the notes secured by the mortgage, the mortgage is not thereby extinguished and the estate merged in him because of the intervening legal estate of the trustee.

4. ———: ———: **Payment: Estoppel.** Although one of two joint makers of a note secured by mortgage on their real estate received an assignment of the same and thereby extinguished the indebtedness, nevertheless where the other joint maker subsequently received a deed from the first to the real estate wherein the grantee assumed the note, this was a reissue of the note by the grantee for a valuable consideration so that the first joint maker could sue him upon it.

Appeal from Audrain Circuit Court.—*Hon. J. D. Barnett,* Judge.

AFFIRMED.

*P. H. Cullen* and *S. D. Stocks* for appellant.

(1) A contract will be held illegal though it does not involve the commission of an indictable offense, or the violation of a statutory prohibition, although the formation of it does not amount to the offense of conspiracy, if it involves or contemplates the perpetration of a fraud upon a third person. Ward v. Hartley, 178 Mo. 135; Siver v. Guaranty Co., 183 Mo. 41; McClure v. Ullman, 102 Mo. 697; Pendleton v. Asbury, 104 Mo. App. 723; Harrington v. Victoria Graving Dock Co., 3 Q. B. D. 549; Jackson v. Duchaire, 3 T. R. 551; Kerr v. Bruton, 24 U. C. Q. B. 390; Stewart v. Scott, 54 Ark. 187; Moody v. Newmarket, 121 Cal. 446; Mitchell v. Uline, 84 Cal. 409; Marcy v. Crawford, 16 Con. 549, 41 Am. Dec. 158; Ray v. Macklin, 100 Ill. 246; Kirkpatrick v. Clark, 132 Ill. 342, 22 Am. St. Rep. 531; Gray v. McReynolds, 65 Iowa, 461, 54 Am. Rep. 16; Buchtella v. Stepanek, 53 Kan. 373; Bennett v. Tiernay, 78 Ky. 580.

(2) As a general rule any contract which places one of the parties under direct inducement to violate the confidence and trust which a third person is authorized in reposing in him, and which places such party under wrongful influence and offers to him a temptation which may injuriously affect the rights of such third person, is illegal. Atlee v. Fink, 75 Mo. 100; Hughes v. Statham, 4 B. & C. 187, 10 E. C. L. 308; Arkwright v. Cantrall, 7 Ad. & El. 565; 34 E. C. L. 164; Forsyth v. Woods, 11 Wall. (U. S.) 484; Cook v. Sherman, 4 McCrary (U. S.) 20; Meguire v. Corwine, 101 U. S. 108; Rice v. Williams, 32 Fed. —; Saltmarsh v. Beene, 4 Port. (Ala.) 283; 30 Am. Dec. 525; McGehee v. Lindsay, 6 Ala. 16; Edwards v. Estell, 48 Cal. 194; Rappan v. Brewing Co., 80 Cal. 574, 13 Am. St. Rep. 174; Weed v. Black, 2 MacArthur (D. C.) 268. (3) It is not essential that the confidence reposed by such third person in the party seeking to enforce the contract should arise out of any legal relation between them; it is sufficient that the confidence was reposed in the latter by the former as a friend and that the latter was aware of such fact. Wyburd v. Stanton, 4 Esp. 179; Bollman v. Loomis, 41 Conn. 581; Holcomb v. Weaver, 136 Mass. 265; Nash v. Kerr Murray Mfg. Co., 19 Mo. App. 1. (4) Any promise which secures to one of several who are signing a common agreement with the same object, any secret advantage over his associates, which moves the former, but is purposely withheld from the latter, is void. 2 Beach on Contracts, sec. 1519; Bastian v. Dreyer, 7 Mo. App. 332; Harwood v. Kopper, 50 Mo. 456; Chapman v. Callahan, 66 Mo. 310; Henry v. Railroad, 17 Ohio 187; Torpey v. Murray (Minn.), 101 N. W. 609; Sanger v. Upton, 91 U. S. 60. (5) Where a contract grows immediately out of and is connected with a prior illegal contract, the illegality of such prior contract will enter into the new contract and render it illegal. And the rule is established that if the con-

nection between the original illegal contract and the new contract can be traced, if the latter is connected with and grows out of the former, no matter how many times and in how many different forms it may be renewed, it cannot form the basis of a recovery; repeating a void promise cannot give validity to it.    Tandy v. Commission Co., 113 Mo. App. 409; Greenwood on Public Policy, 8; Buckingham v. Fitch, 18 Mo. App. 91; DeBegnis v. Armstead, 10 Bing. 107, 25 E. C. L. 47; Aubert v. Maze, 2 B. & P. 371; Armstrong v. Toler, 11 Wheat. (U. S.) 258; Sturges v. Bush, 5 Day (Conn.) 452; Webster v. Sturges, 7 Ill. App. 560; Henderson v. Palmer, 71 Ill. 579, 22 Am. Rep. 117; Nash v. Monheimer, 20 Ill. 215; Cox v. Grubb, 47 Kan. 435, 27 Am. St. Rep. 303; Davis v. Holbrook, 1 La. Ann. 178; Wheeler v. Russell, 17 Mass. 258; Jones v. Surprise, 64 N. H. 243.    (6)  A contract which is illegal as against public policy cannot be rendered valid by ratification, as the principle which prohibits the execution of such a contract equally prohibits its subsequent ratification; nor will any subsequent promise to perform provisions of the illegal contract be enforcible.    Swann v. Miller, 82 Ala. 530; Moog v. Hannon, 93 Ala. 503; Rainey v. Capps, 22 Ala. 388; Butler v. Lee, 11 Ala. 885, 46 Am. Dec. 230; Shippey v. Eastwood, 9 Ala. 198; Pettit v. Pettit, 32 Ala. 288; Tucker v. West, 29 Ark. 386; Calhoun v. Phillips, 87 Ga. 482; Thompson v. Warren, 8 B. Mon. (Ky.) 488; Pope v. Linn, 50 Me. 85; Plaisted v. Palmer, 63 Me. 576; Ladd v. Rogers, 11 Allen (Mass.) 211; Day v. McAllister, 15 Gray (Mass.) 434; Tucker v. Mowrey, 12 Mich. 379; Winfield v. Dodge, 45 Mich. 355, 40 Am. Rep. 476; Handy v. Publishing Co., 41 Minn. 188, 16 Am. St. Rep. 695.    (7)  In determining whether a new contract is so connected with an illegal contract or transaction as to render it also illegal, the test is whether the plaintiff in establishing his case is or is not required to resort to his illegal contract; in the

former case the contract is held to be illegal.    Parsons
v. Randolph, 21 Mo. App. 353; Harrison v. McCluney,
32 Mo. App. 481; Tyler v. Larimore, 19 Mo. App. 445;
Suits v. Taylor, 20 Mo. App. 166; Kitchen v. Greena-
baum, 61 Mo. 110; Smith v. Mawhood, 14 M. & W. 452;
Simpson v. Bloss, 2 Marsh. 542, 7 Taunt. 246, 2 E. C. L.
246; Fivas v. Nichols, 2 C. B. 501, 52 E. C. 501; Farmer
v. Russell, 1 B. & P. 286; Taylor v. Rowers, 1 Q. B. D.
291; Hoffman v. McMullen, 83 Fed. 372; Catts v. Pha-
len, 2 How. (U. S.) 276; Harris v. Runnels, 12 How.
(U. S.) 79.    (8) The rule that all subsequent con-
tracts based on and growing out of an illegal contract
are also illegal is well shown in the case of a subse-
quent contract to pay money owing on an illegal con-
tract; and in such a case the consideration of such a
contract is based on the illegal contract and is also
illegal.    This rule applies equally though a new con-
sideration also enters into the new contract.    Claflin v.
Torlina, 56 Mo. 369; Bick v. Seal, 45 Mo. App. 475;
Brown v. Tarkington, 3 Wall. (U. S.) 377; Allen v.
Deming, 14 N. H. 133, 40 Am. Dec. 179; Boutelle v.
Melendy, 19 N. H. 196, 49 Am. Dec. 152; Eyre v. Eyre,
19 N. J. Eq. 42; Crawley v. White, 78 L. T. N. S. 167;
Young v. Timmins, 1 Tyrw. 226; Clay v. Ray, 17 C. B. N.
S. 188, 112 E. C. L. 188; Geere v. Mare, 2 H. & C. 339;
Bibb v. Hitchcock, 49 Ala. 468, 20 Am. Rep. 288;
Chancely v. Bailey, 37 Ca. 532, Am. Dec. 350; Hall v.
Gavitt, 18 Ind. 390; Firemen's Ass'n v. Berghaus, 13
La. Ann. 209; Howe v. Litchfield, 3 Allen (Mass.) 443;
Coulter v. Robertson, 14 Smed. & M. (Miss.) 18; Cross-
ley v. Moore, 40 N. J. L. 27.    (9) The payment of a
note by one of the makers extinguishes the original debt
and cancels the note and no right of action accrues on
the note to the maker who pays it.    When taken up by
its maker the note is discharged, whatever the makers
intention may be.    Gordon v. Walmsley, 21 Cal. 77;
Stevens v. Haman, 88 Mich. 13, Am. St. Rep. 125; Knu-

land v. Miles, (Tex. Civ. App.) 24 S. W. 1113; Williams v. Gerber, 76 Mo. App. 18; Burton v. Rutherford, 49 Mo. 258; Jackson v. Wood, 108 Ala. 209; Marshall v. Meyers, 96 Mo. App. 647; Chandler v. Calvert, 87 Mo. App. 368; Powers v. Fouche, 14 N. Y. St. 406; Beede v. R. E. Bank, 4 Ark. (4 Pike) 546; Long v. Bank of Cynthiana, 11 Ky. (1 Litt.) 290; Mattex v. Leach, 16 Ind. App. 112, 43 N. E. 969; Gillett v. Sweet, 6 Ill. (1 Gilman) 475; Davis v. Stevens, 10 N. H. 186.   (10)   If the mortgage was given by LaFon & Curry to Sachs without any consideration it could not be enforced against either Curry or LaFon and certainly cannot be enforced against LaFon when to do so would assist Curry to realize on a corrupt deal.   Bank v. Miller (Ill.), 27 L. R. A. 459; Briggs v. Langford (N. Y.), 14 N. E. 502; Lewis v. Loan Assn., 183 Mo. 351; Moore v. Calkins, 95 Cal. 435; Saunders v. McClintock, 46 Mo. App. 216; Peterson v. Breitag, 88 Iowa 418; 55 N. W. 86; 2 Jones on Mortgages (6 Ed.), secs. 612, 617, 1807; Rubber Co. v. Wilson, 55 Mo. App. 656.

*James E. Rieger* and *George Robertson* for respondent.

(1)   The assignment of the notes by Sachs to Curry did not operate as a payment of them nor as an extinguisment of them as between any of the parties thereto. Stevens v. Hannon, 86 Mich. 305; Zuelig v. Hemerlie, 60 O. St. 27, 71 Am. St. Rep. 707.   This transfer had none of the elements of satisfaction.   It was not intended as payment.   Beach on the Modern Law of Contracts, sec. 422, 423.   Tiedeman on Com. Paper, sec. 371.   It is immaterial whether as between Sachs and Curry the transfer of the notes from Sachs to Curry would operate as payment or not.   In any event Curry would be entitled to subrogation as against LaFon. Mingus v. Daugherty, 87 Ia. 56; Peebles v. Gay, 115 N. C. 38; Thompson v. Longon, 42 Mo. App. 146; Watson v. Wal-

ther, 23 Mo. App. 263. Treating the transfer of the notes by Sachs to Curry as a payment, Curry is entitled to avail himself of any or all the securities, means or remedies which Sachs had for enforcing payment of the notes. Bank v. Dixon, 4 Vt. 587; Edgerly v. Emerson, 23 N. H. 555; Peebles v. Gay, 44 Am. St. Rep. 433. Because of the division of notes LaFon was liable to Curry for those he took, whether it be payment or what. (2) Where a grantee accepts a conveyance containing a clause reciting that the grantee assumes a mortgage, he hereby becomes personally liable for the debt so secured to his grantor on his agreement of assumption. Warvelle on Vendors, sec. 644, and authorities cited under note 36. The language here used in the deed from Curry to LaFon is sufficient to establish an agreement upon the part of LaFon to pay directly to Curry the amount of the notes held by Curry. Warvelle on Vendors, sec. 645, and authorities there cited. Landan v. Cottrill, 159 Mo. 308; Eggleston v. Morrison, 84 Ill. App. 625; 20 Am. and Eng. Ency. Law (2 Ed.), 989, note 2. Even an oral promise to assume a mortgage as part of the purchase price creates a debt from the grantee to the grantor which may be enforced. Warvelle on Vendors, sec. 647; Drake v. Bagley, 69 Mo. App. 39. (3) LaFon is bound to pay these notes which he assumed and it is immaterial whether he pays the notes or pays the balance due on the purchase price, the notes stand for the balance of the purchase price, and having assumed this part of the mortgage debt, he is bound to pay it. Tomlinson v. Givens, 144 Mo. 25. (4) The assumption of the notes held by Curry is equivalent to a reissue of the notes. Sater v. Hunt, 66 Mo. App. 527; Edwards, Bills and Notes (3 Ed.), sec. 723. It is immaterial whether it may be said that LaFon reissued the notes or whether he assumed them or whether he simply agreed to pay the amount of the notes as part of the purchase price. In any event he agreed to

pay the mortgage.    He thereby adopted the terms of
the mortgage and in adopting the terms of the mort-
gage adopted the notes.    Jones on Mortgages, sec. 740.
And having assumed the mortgage he is estopped to de-
fend against it.    Jones on Mortgages, sec. 744; Keifer
v. Shacklett, 85 Mo. App. 449; Price v. Reed, 38 Mo.
App. 489; Fitzgerald v. Barker, 85 Mo. 13.

NORTONI, J.—This is a suit by the holder of a note
against the grantee in a deed on a stipulation in the
deed by which the defendant covenanted to assume and
pay the note mentioned which was secured by a mortgage
on the land conveyed by the deed.    The plaintiff recov-
ered and defendant appeals.

The facts out of which the controversy arose are
somewhat complicated and will be stated *in extenso*. The
plaintiff, Curry, and the defendant, LaFon, had for-
merly been partners in the real estate business.    This
partnership was dissolved, however, recently before their
association in the present instance.    Having decided
to purchase some lands jointly in the state of Arkansas,
they visited one Louis Sachs who was engaged in the
real estate business, and together examined and agreed
to purchase 2,080 acres of land in Arkansas owned by
Sachs.    This was in July.    They entered into a writ-
ten contract with Sachs whereby they agreed to pur-
chase the 2,080 acres of Arkansas land at the stipulated
price of $17,000, to be paid as follows:    Curry and La-
Fon were to assume the payment of a $2,500 mortgage on
the land, they were to pay Sachs $3,000 in cash, deed
him certain property in Missouri owned by them jointly
at the agreed price of $4,000, and to execute their joint
promissory notes, payable to Sachs for the sum of $7,500,
which notes were to be secured by a second mortgage on
the lands acquired from Sachs.    Sachs agreed to fur-
nish good and sufficient title to the Arkansas lands and
execute a warranty deed therefor, subject only to the
$2,500 mortgage thereon heretofore mentioned.    The

deal was to be finally consummated on the first of the following January. During the interim between the time this contract was entered into and the date at which it was finally consummated, it was discovered that Mr. Sachs was unable to furnish satisfactory title to 240 acres of the land mentioned. It seems the present plaintiff Curry took advantage of this fact, and without the knowledge of his associate, the present defendant LaFon, interviewed Mr. Sachs and informed him that inasmuch as their contract for the purchase of the Arkansas land was an entire obligation, he considered himself no longer obligated to complete the deal, as Sachs would be unable to furnish sufficient title to all the lands mentioned. He suggested, however, that if, upon a final consummation of the deal, Sachs would agree to take from him an equity which he owned in several brick buildings in Green City, Missouri, at an agreed price of $3,500 and exchange therefor notes to that amount, which were to be executed by the defendant LaFon and himself to Sachs, that he might waive his objection and consummate the trade, provided Sachs agreed to drop out of the deal the 240 acres of land to which the title had proved insufficient, at an agreed valuation of $2,000. Mr. Sachs investigated the Green City equity owned by Curry and entered into a collateral agreement with him to the effect suggested. The purport of this agreement was that upon Curry and LaFon consummating the deal for the Arkansas lands, Sachs would assign to Curry certain of the notes to be jointly executed by Curry and LaFon and purchase the Green City equity at $3,500. This collateral agreement, however, was not revealed to the defendant LaFon, and in fact it was the purpose of both Curry and Sachs to keep LaFon in ignorance thereof. For some reason, the deal for the Arkansas property was not finally consummated until the fourteenth of the following February, on which date the several parties met at Kirksville, Missouri, and exchanged deeds.

The 240 acres of Arkansas land to which Sachs had found himself unable to perfect title, was dropped from consideration at an agreed valuation of $2,000. As thus modified, Curry and LaFon purchased from Sachs 1,840 acres of land at a valuation of $15,000, to be paid for as above indicated, except instead of giving to Sachs a second mortgage for $7,500, they were to execute notes and a mortgage to him for $5,500. On that date, February 14, 1904, Sachs executed and delivered to Curry and LaFon a warranty deed conveying the 1,840 acres of Arkansas land, subject to the $2,500 mortgage then outstanding against the same, which mortgage Curry and LaFon assumed. Curry and LaFon, at the same time, each paid to Sachs $1,500 in cash, a total of $3,000, and conveyed to him equities in certain real properties at an agreed valuation of $4,000, and executed to him their two series of joint and several promissory notes, aggregating $5,500. These notes were all antedated in accordance with the original agreement as of January 1, 1904. As stated, instead of this $5,500 indebtedness being included in one note, it was divided into six notes, all of which were dated January 1, 1904, signed by both Curry and LaFon, and payable to Louis Sachs or order, in the following manner: two notes for $1,000 each, due January 1, 1906; two notes for $1,000 each, due January 1, 1907; two notes for $750 each, due January 1, 1908; all of the notes to bear interest at the rate of six per cent, etc. While Curry and LaFon both signed each of the notes mentioned, it appears they were divided in the manner indicated and ran concurrently in two series in order to enable Sachs and Curry to carry out and consummate their collateral bargain concerning the Green City equity. Although this is true, La Fon insists that at and before the execution of the notes, he was not informed as to this purpose nor as to the details of the collateral trade between Sachs and Curry respecting the Green City property. Immediately upon the

execution and delivery of the several notes to Sachs, or
during the same day at least, Sachs indorsed in blank
and delivered to Curry one-half of the notes mentioned,
amounting to $2,750; that is, one of the entire series of
notes, and returned to Curry $750 in money, making a
total of $3,500, notes and cash; and in consideration
thereof, accepted from Curry a deed to his equity in the
Green City property at an agreed valuation of $3,500.
Mr. LaFon admits in his testimony that he learned these
facts during that day and immediately upon the execu-
tion and delivery of the notes.    Although Curry and his
wife, before the delivery of the notes to Sachs, executed
a mortgage deed of trust to Sachs securing the same, Mr.
LaFon failed to sign the same at that time for the reason
his wife was not in Kirksville.    But with full knowl-
edge of the fact that Curry had received an assignment
of the notes for the Green City property, LaFon con-
veyed the mortgage to his home at Mexico, Missouri,
where he and his wife executed the same before a proper
officer two days thereafter and delivered it to Mr. Sachs.
In April, thereafter, Sachs informed Mr. LaFon fully
as to the details of his collateral bargain with Curry
whereby he had acquired the Green City property and
Curry had become possesed of $2,500 of the joint notes of
Curry and LaFon; or in other words, that he had as-
signed to Curry for the consideration mentioned, one-
half of the joint indebtedness of Curry and LaFon to
him and that Curry then held the notes.    In the month
of June thereafter, the defendant, LaFon submitted a
proposition to Curry to purchase from him Curry's one-
half interest in the equity of redemption in the Arkansas
lands on which the mortgage securing the notes lay. Cur-
ry agreed to accept and LaFon agreed to pay to him
$1,500 for his equity therein.    LaFon caused to be
drafted a warranty deed from Curry and wife purporting
to convey Curry's one-half interest in the lands mention-
ed to LaFon.    This deed recited a consideration of $9,-

000, subject, however, to the $2,500 mortgage which was outstanding against the land at the time Curry and La- Fon bought it, and subject also to the following mort- gages: two for $1,000, each given January 1, 1904, due January 1, 1906; two for $1,000 each, given January 1, 1904, due January 1, 1907; two for $750 each, given Jan- uary 1, 1904, and due January 1, 1908; all of which mort- gages it is stipulated therein, "the said A. M. LaFon assumes." All of the evidence in the case tends to es- tablish that the indebtedness assumed in this deed is the identical indebtedness existing against the lands by virtue of the joint notes of Curry and LaFon, of which notes Curry, at the time, as LaFon well knew, was pos- sessed of three, representing a principal of $2,750 un- der assignment from Sachs, the payee. A few days after having received this deed from LaFon, as pre- pared by him, Curry and his wife executed and deliv- ered the same to LaFon. LaFon accepted the deed con- taining the covenant of assumption inserted therein by himself, or the scrivener at his instance, and paid Curry $1,500 in addition to the covenant of assumption as a consideration for his equity of redemption in the Arkan- sas land. At this time, June 25, 1904, none of the notes mentioned had fallen due. Upon maturity of the first note, Curry asserted his claim against LaFon on the cov- enant of assumption in the deed, and LaFon refused to pay, declaring that he was not indebted to Curry for several reasons, to be hereinafter noticed. Thereupon Curry instituted the present action on the covenant in the deed to recover the amount of the first installment of indebtedness originally evidenced by one of the joint notes of Curry and LaFon to Sachs, dated January 1, 1904, for the sum of $1,000 and due January 1, 1906, with interest thereon, which note had been assigned to Curry by Sachs as above stated, and was secured by a mortgage assumed by LaFon. The circuit court peremp-

torily directed a verdict for the plaintiff and defendant appeals.

As stated above, the evidence tended to prove that Curry made a collateral deal with Sachs whereby he exchanged the Green City equity for the note in suit and others; that this collateral arrangement was carefully concealed from LaFon until the purchase of the Arkansas land was actually consummated and the notes executed; and further, that Curry made a secret profit by the exchange. That is to say, Curry seized upon the opportunity to be relieved from the entire contract for the purchase of the Arkansas lands because of the failure of title to a portion thereof, and thereby procured an agreement from Sachs to accept his Green City equity at an inflated value for the notes mentioned, and thus realize a secret profit to himself of probably $2,000. An argument is predicated on this evidence to the effect that Curry and LaFon having associated themselves together in a joint undertaking for the purchase of the Arkansas land, the highest degree of good faith was due from each to the other and that therefore the contract which Curry made with Sachs violative of this confidence and whereby a secret profit accrued to Curry, even though indirectly, as by the exchange of the equity for the notes, rendered the notes absolutely void as against public policy and therefore acquits LaFon of the duty to respond to Curry in this action. The peremptory direction of a verdict for the plaintiff by the trial court, of course, eliminated this element of the defense. The defendant complains of this action and insists the matter should have been referred to the jury for an ascertainment of fact as to whether or not Curry and Sachs had in fact conspired to conceal this collateral arrangement from him, and that it resulted in a secret profit to Curry. It is no doubt true that the taking of a secret profit by one of two co-adventurers in the manner and under the circumstances

suggested, is contrary to the policy of the law.    [See-
horn v. Hall, 130 Mo. 257, 32 S. W. 643.]    And were this
suit on the notes alone for contribution, possibly an ac-
counting of the profits mentioned could be had.    How-
ever this may be, the present action predicates not on
the note mentioned and its original consideration, but
rather upon the covenant of assumption of payment con-
tained in the deed resting upon an entirely new consid-
eration; that is, the conveyance of Curry's equity of re-
demption in the Arkansas land to LaFon.    We are of
the opinion that the entire matter is precluded by this
covenant.    That is to say, that the defendant is estopped
from asserting the invalidity of the obligaion of the note
which he has assumed by the covenant contained in the
deed.

As stated before, the suit proceeds upon the cove-
nant in the deed by which the defendant assumed the
payment of the note to Curry.    It is well settled that a
covenant contained in a deed of the nature mentioned,
creates an obligation on which a mortgagee may sue the
grantee covenantor for the indebtedness assumed.    [Fitz-
gerald v. Barker, 4 Mo. App. 105, 70 Mo. 681, 85 Mo. 13,
13 Mo. App. 192; Keifer v. Shacklett, 85 Mo. App. 449;
Jones on Mortgages (6 Ed.), sec. 740 et seq.]    And it is
the universal rule that the purchaser in such circum-
stances is not allowed to defend against a mortgage debt
he has assumed to pay on the ground that it is without
consideration.    [Terry v. Durand Land Co., 112 Mich.
665; Crawford v. Edwards, 33 Mich. 354.]    Nor will
he be heard to set up the invalidity of the mortgage.
[Parkinson v. Sherman, 74 N. Y. 88.]    The purchaser
is not permitted to show the mortgage deed was invalid
as against the mortgagor.    [Crawford v. Edwards, 33
Mich. 354; Comstock v. Smith, 26 Mich. 306; Gowans
v. Pierce, 57 Kan. 180; Alt v. Branhozer, 36 Minn. 57.]
Nor will he be permitted to say the mortgage debt as-

sumed was void under the pre-emption laws (Green v. Houston, 22 Kan. 35), for the grantee is liable on his covenant of assumption even though his grantor were not. [Dean v. Walker, 47 Am. Rep. 467, 107 Ill. 540.] And this doctrine is equally true where the mortgage and deed were originally void on account of usury. [Jones on Mortgages (6 Ed.), sec. 736.]   The acceptance of the deed containing such a covenant is sufficient to and does operate an estoppel against and concludes the grantee from subsequently denying the validity of that which he has theretofore, for a valuable consideration, admitted to be a valid obligation.   It is certain that he cannot hold under the deed and dispute the validity of his covenant therein which enters into and forms the very consideration which moved the grantor to vest title in him. [Fitzgerald v. Barker, 85 Mo. 13, 21; Jones on Mort. (6 Ed.), 744; 13 Am. and Eng. Ency. Law (2 Ed.), 813, 820.]   Defendant insists, however, that if the note was void as against public policy, then there was no debt to be assumed by the grantee.   It is unnecessary to consider this proposition further than to say that under all of the authorities, he is estopped from disputing the covenant in his deed recognizing the debt as valid and assuming its payment.   Although the notes in the first instance were invalid on the grounds of public policy referred to, and this question it is unnecessary to decide, the defense is precluded by estoppel.   There was certainly a valid consideration for the covenant contained in the deed by which the defendant received title to Curry's interest in the equity of redemption, and although the note was void in the first instance, it would operate as a sufficient memorandum to show the amount and character of indebtedness which was assumed by a valid obligation contained in the deed.   Be this as it may, the defendant is estopped at all hazards from asserting that the note was originally invalid.

The parties were joint owners of the equity of redemption and likewise joint and several makers of the notes assumed in the deed.    It is therefore insisted that as Curry received an assignment and became possessed of the three several notes mentioned while he yet retained his title to the equity as tenant in common with the defendant, the doctrine of merger then intervened and entirely extinguished the indebtedness mentioned in the notes, and in this view, there was no indebtedness upon which the covenant of assumption in the deed could attach.    The rule is absolute at law that a merger takes place when a greater estate and a lesser coincide and meet in one and the same person, in one and the same right, without the intervention of any other or outstanding right or title.    Under such circumstances, the lesser estate is annihilated or merged into the greater. It is said:    "The doctrine of merger springs from the fact that when the entire equitable and legal estates are united in the same person, there can be no occasion to keep them distinct, for ordinarily it would be of no use to the owner to keep up a charge upon the estate of which he was seized in fee simple; but if there is an outstanding, intervening title, the foundation for the merger does not exist, and as a matter of law, it is so declared."    [Stanton v. Thompson, 49 N. H. 72; Jones on Mortgages (6 Ed.), sec. 848; 20 Am. and Eng. Ency. Law (2 Ed.), 1064.]    It therefore appears that in order to effect a merger so as to extinguish the lesser estate, there must be a union in the same person of both the equitable and legal titles without an intervening right operating to prevent a merger.    Therefore, when one holds an equity of redemption and the legal title to the property is outstanding in a trustee, the mere fact that he acquires and holds the notes and mortgage is insufficient to operate a merger of the equitable and legal estates in him, and this for the reason that the legal estate is still outstanding in the trustee and thus intervenes to

prevent the merger. This doctrine is sound in the principle underlying the rule of merger, as we understand it. It has been so declared by the courts and asserted by the standard text-writers. [Hospes v. Ahnstedt, 13 Mo. App. 270; State ex rel. Peters v. Koch, 47 Mo. 582; Jones on Mortgages (6 Ed.), sec. 488.]

Now in the case at bar, while Curry and La-Fon held the equity of redemption, the lands were encumbered by what is commonly known as a mortgage deed of trust. By the provisions of this instrument, the legal title was vested in Louis Sachs with power of sale upon default in the payment of the notes mentioned. Sachs therefore occupied the position of trustee in whom the legal title to the lands at all times resided and thus intervened to prevent a merger of estates in Curry by virtue of his holding the notes while he was cotenant in the equity of redemption. Aside from all of this, La-Fon's acceptance of the covenant assuming to pay the indebtedness mentioned as parcel of the consideration for the lands, operates to estop him from making the defense of merger. [Fitzgerald v. Barker, 85 Mo. 13, and cases supra.]

It is argued that as Curry and LaFon were joint and several makers of the notes, the fact that Curry purchased the same from Sachs and received an assignment thereof, operates at law as payment and entirely extinguishes the indebtedness therein evidenced and that therefore there is no indebtedness evidenced by the note upon which the covenant in the deed could attach and operate. Although the purchase of the note by Curry, one of the original makers, operated the extinguishment of its original obligation, so as to prevent him from maintaining an action thereon against LaFon other than for contribution or for money paid to the use of his co-obligor (Williams v. Gerber, 75 Mo. App. 18; Dillenbeck v. Dygert, 97 N. Y. 303; Reynolds v. Schade, 131 Mo. App. 1; 109 S. W. 629-632; Stevens v. Hannan, 86 Mich.

305), and although such a purchase by and assignment to Curry operated to prevent his reissuing the note if a valid one, as an obligation on its original promise against his comaker, LaFon, at least for an amount greater than his right of contribution against his comaker (Stevens v. Hannan, 86 Mich. 305) there is certainly no reason why LaFon could not, for a new and valid consideration, reissue the note against himself. Upon this theory of the case, it is to be remembered LaFon knew the notes were held by Curry and that they were paid. If they were not yet due and he saw fit to reissue the identical notes to Curry or to any other person for a new and valuable consideration, we are familiar with no principle to forbid it, in so far as he was concerned. That is, to forbid him reissuing them as obligations against himself only. The general rule that the maker of a note who is *sui juris* may reissue the paper before maturity for a valid consideration so as to bind him as effectually as in the first instance, is firmly imbedded in the law and is beyond question. [Sater v. Hunt, 66 Mo. App. 528; 2 Edwards, Bills and Notes (3 Ed.), sec. 723; 4 Amer. and Eng. Ency. Law (2 Ed.), 500.) And so it is, we conclude that even though the notes were void in the first instance as against public policy because of the misconduct of Curry and Sachs, and for that reason unenforceable against LaFon, or even though they were extinguished or paid by the act of Curry, the joint maker, purchasing the same, it was competent for LaFon to revive, rehabilitate and reissue the same for a new, distinct and valid consideration, as he did by assuming their payment by the covenant in the deed as part of the consideration for the lands.

As to the proposition that even though the note was void in the first instance, it was competent for LaFon to reissue the same as a valid obligation against himself for a new consideration. It may be said that if it was

infected with illegality at all, the taint was not in the original consideration for which the note was given but resulted rather from the misconduct of Curry and Sachs when considered from the standpoint of LaFon and his rights. The consideration for the note in the first instance was the Arkansas lands which were purchased by Curry and LaFon, and this consideration was a valuable one and entirely free from immorality or illegality. The original consideration was neither immoral nor illegal in itself, however much the promise of the note, when considered from the standpoint of LaFon, may have become tainted by the misconduct of Curry and Sachs. It is very true if the original consideration were illegal or immoral, then no subsequent contract bearing an obligation to execute the original and into which the original immoral or illegal consideration mingled, could be enforced. The policy of the law forbids the enforcement of a subsequent contract based upon such illegal or immoral consideration. [Bick v. Seal, 45 Mo. App. 475.] This proposition is not true, however, when the consideration of the original contract was neither immoral nor illegal and the subsequent contract based thereon is founded upon a new and valid consideration, as in this case, as will fully appear by reference to Gwinn v. Simes, 61 Mo. 335; Hutchinson v. Dornin, 23 Mo. App. 575, 15 Amer. and Eng. Ency. Law (2 Ed.), 992. In Gwinn v. Simes, supra, the original contract involved was a note executed on Sunday and therefore void because of the Sunday statute. The suit was to enforce a mortgage executed on a secular day thereafter, securing the note which contained the original invalid promise. It was adjudged that even though the original promise was void as against the policy of the law, the consideration itself, for which the note was given, (the loan of money) was neither illegal nor immoral and that therefore the subsequent contract contained in the mortgage executed on a secular day was valid and enforceable.

The case, in principle, is precisely in point here, and conclusive on the question under consideration. However this may be, LaFon is estopped from making this defense by accepting the covenant in the deed assuming to pay the debt. [Fitzgerald v. Barker, 85 Mo. 13, and authorities cited.]"

The judgment will be affirmed. *Bland, P. J.,* and *Goode, J.,* concur.