## E. FOX, Appellant, v. J. B. BROSIUS and H. C. TANGNER, Respondents.

**Springfield Court of Appeals, January 30, 1915.**

1. **BILLS AND NOTES: Fraud.** A note tainted with fraud is void *in toto.*

2. **————: Consideration: Fraud.** Defendants gave their note to plaintiff the consideration being that plaintiff contracted with defendants and plaintiff's debtor that he would. not foreclose a certain chattel mortgage on a horse of the debtor which the debtor 'had given to plaintiff to secure a note. The note was an enforceable obligation against defendants in plaintiff's hands regardless of whether the transaction between plaintiff and his debtor was tainted with fraud as to other creditors of debtor.

3. **————: Consideration.** Circumstances connected with the giving of a note by defendants to plaintiff, the defense being no consideration, reviewed. Note *held* enforceable as supported by valid consideration.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. D. E. Blair,* Judge.

REVERSED AND REMANDED (*with directions*).

*A. L. Thomas* and *Shannon & Esterly* for appellant.

(1) The defendants were strangers to the grantor and grantee in the chattel mortgage and, although the chattel mortgage was made to secure a note for more than was due and was fraudulent as to creditors, yet it was valid as between the mortgagor and the mortgagee. Charles v. White, 214 Mo. 202; Henderson v. Henderson, 13 Mo. 151; Jacobs v. Smith, 89 Mo. 673; Stevenson v. Edwards, 98 Mo. 622; Thompson v. Cohen, 127 Mo. 215, 20 Cyc. 419; Reid v. Mullins, 48 Mo. 344. (2) Defendants, Tangner and Brosius, not being creditors or purchasers from Ceideburg are not pro-

tected by the statutes covering fraudulent convey-
ances. Section 2881, R. S. 1909. (3) Fox, the plain-
tiff in this case, could have maintained replevin against
Ceideburg for the property covered by the chattel
mortgage in this case, and therefore his agreement to
refrain from foreclosing said chattel mortgage was a
good consideration for the note executed by Tangner
and Brosius. Moore v. Thompson, 6 Mo. 353; Tufts v.
Dubignon, 61 Ga. 322; Daniels v. Fitch, 8 Pa. St. 585;
Bush v. Rogan, 65 Ga. 320; Peterson v. Brown, 17
Nev. 172, 30 Pac. 697; Moseley v. Moseley, 15 New
York, 334; Murphy v. Hubert, 16 Pa. St. 50; Butler v.
Moore, 73 Mo. 151, 40 Am. St. 348.

*Howard Gray* and *J. H. & W. E. Bailey* for re-
spondents.

(1) Our law distinguishes between a contract
made in fraud having been consummated, and one
where the contract is still executory. Where it is ex-
ecutory, as in this case, the law allows the turpitude
of the transaction to be shown to take away induce-
ments to fraudulent conduct. It will not carry fraud-
ulent contracts into execution. Hamilton v. Scull's
Admr., 25 Mo. 105; Knapp v. Knapp, 118 Mo. App.
705; Fenton v. Ham, 35 Mo. 409; Mitchell v. Henley,
110 Mo. 598. (2) The test as to whether a demand
with an illegal transaction be capable of being enforced
is, whether the plaintiff requires to rely on such trans-
action in order to establish his case. If the plaintiff
cannot open his case without introducing the immoral
or corrupt contract, the court will not hear him. Tyler
v. Larimore, 19 Mo. App. 446. (3) The fact that the
note, given by Ceideburg to plaintiff, Fox, was par-
tially for money actually owed, can make no difference.
A conveyance, the consideration of which is partly to
hinder, delay or defraud creditors, is void *in toto*. Mc-
Nichols v. Rubleman, 13 Mo. App. 515; McDonald v.

Wagner, 5 Mo. App. 56; Kuykendall v. McDonald, 15 Mo. 416; Peltz v. Long, 40 Mo. 533.

ROBERTSON, P. J.—This action is based on a promissory note for the principal sum of $408, dated August 20, 1912, due ninety days after date, payable to the plaintiff, providing for the interest to be compounded if not paid annually, and that in case the note should be placed in the hands of an attorney for collection ten per cent additional is to be added. It also reads that "This note is given and governed by a certain contract hereto attached, entered into by the parties hereto and subject to the conditions and equities therein set out." The contract referred to, signed by plaintiff, defendants and F. O. Ceideburg, therein mentioned, is as follows:

"This to witness that F. O. Ceideburg is indebted to E. Fox, of Anthony, Kansas in the amount of $408 being the balance due on a promissory note executed April 15, 1912, and due June 15, 1912; that said note is secured by chattel mortgage on a mare, Eva Direct, and other personal property;

"That said property is about to be taken to enforce the payment of the above amount due on said note;

"That J. B. Brosius and Henry Tangner desire to assist the said Ceideburg in meeting the said note and avoiding the taking of said property;

"That the above amount due on said note covers two notes held by C. A. Gwinn, of Newkirk, Oklahoma, in the principal sum of $100 each and on which the said E. Fox has signed as security for the said Ceideburg, the balance of the $408 being due to E. Fox, personally;

"Now therefor, it is agreed that in consideration of the said E. Fox refraining from proceeding to collect the amount due on said note to him by taking the property described in said chattel mortgage, the said

J. B. Brosius and Henry Tangner agree to and do hereby execute to the said E. Fox, their promissory note in the amount of $408, due on or before ninety days after date with interest from date at eight per cent per annum;

"That said note together with this agreement shall be placed in escrow in the Carthage National Bank, of Carthage, Missouri;

"That Ceideburg shall pay to said bank for B. H. Esterly, attorney for E. Fox, the money received by him from the races at Knell's Fair or so much thereof as shall be necessary to take up said note;

"That the said bank shall pay to B. H. Esterly so much of the said money as is due to E. Fox personally, as above described, and shall hold the balance until the said two notes due to C. A. Gwinn be produced and shall then apply the balance upon the payment of said notes; at the end of the ninety days from the date hereof if the full amount of said note executed by Brosius and Tangner has not been paid in full by Ceideburg, they agree to pay said balance and upon doing so, E. Fox shall assign to them his said note dated April 15th, and executed by Ceideburg, and the chattel mortgage securing same."

The note mentioned in the first paragraph of the contract as bearing the date of April 15, 1912, and due June 15, 1912, was originally $1000. The defendants undertake to avoid liability in this case because they say $603.50, of it was without any valid consideration passing from plaintiff to Ceideburg; that said sum was placed therein and the mortgage given solely for the purpose of aiding Ceideburg to defraud his creditors. The defendants won in the trial court, where a jury trial was waived, and plaintiff has appealed.

There may be some testimony in the record in this case, discernible by one familiar with the real facts, tending to show that the plaintiff combined with Ceideburg to defraud the latter's creditors but we have

failed to find any that convinced us of that fact. At the time the $1000 note was given Ceideburg, who it appears has now joined with the defendants to defeat plaintiff's claim, testified at the time he gave the $1000 note he was indebted to the amount of nearly $4000 and that $400 or $500 of this amount was due to "creditors other than E. Fox." This shows that he was indebted to Fox in some way for much more than the $1000. It appears that at the time the note was given plaintiff was surety on Ceideburg's note to one Lambert and as we gather from the record Lambert was secured by chattel mortgage on Ceideburg's property, possibly being some of the property described in the chattel mortgage to the plaintiff. This property it seems was sold under the mortgage, the proceeds discharged the note, then, or within a short time thereafter, and five days after the $1000 note was given, $603.50 was credited thereon. At the time the $1000 note was given and the chattel mortgage executed, covering three other horses besides the one referred to in the contract above quoted, Ceideburg was living at Anthony, Kansas, the home of plaintiff, and Ceideburg says that the transaction relative to said mortgage was for the purpose of enabling him to get the property out of Kansas and to Carthage, this State, without his creditors interfering, but the chattel mortgage was not recorded or placed on file in Kansas and was not filed in Jasper county until June 1, 1912. It is not made clear when Ceideburg left the State of Kansas but evidently some time before the date of the filing of the mortgage in this State. As before stated we do not believe that there is sufficient testimony disclosed in the record in this case to justify a finding that plaintiff is guilty of any wrongdoing whatever in his transactions with Ceideburg, but we shall not place our decision on that point.

The defendants insist that since the note upon which the balance was due and for which they exe-

cuted the note in suit here was tainted with fraud, so
that the plaintiff could not enforce it by an action
without disclosing his turpitude, that therefore the
note sued on here is without consideration and void.
They also cite authorities to the effect that where a
note is tainted with fraud that it is void *in toto*. We
may concede that the defendants are correct in their
statement of law was an abstract proposition (Parke,
Davis & Co. v. Mullett, 245 Mo. 168, 173; 149 S. W.
461), and we may further concede that if the transac-
tion between plaintiff and Ceideburg were fraudulent
that no subsequent conduct or ratification on the part
of Ceideburg could validate the $1000 note as between
him and the plaintiff (points which are not necessary
to and which we do not decide), yet defendants are not
entitled to be relieved from the payment of their note
to plaintiff.

The plaintiff contends that even if the fraud ex-
isted, as alleged by defendants, that yet the contract
between plaintiff and Ceideburg was enforceable as
between them, and hence formed a valid consideration
for the note here involved, citing numerous cases which
hold that where a party has conveyed property seek-
ing to defraud his creditors that the grantor cannot
avoid the conveyance. These cases are not decisive of
the issues in this case.

The defendant's entire attack on the note in suit
is based on the idea that the note here involved is with-
out consideration, and such is the theory of their an-
swer filed in this case. They say that since plaintiff
could not have enforced his note and mortgage against
Ceideburg, could not have taken the property therein
described from Ceideburg, that, therefore, the defend-
ants cannot enforce them if they get them under the
contract above quoted. It matters not whether plain-
tiff could have enforced the note and mortgage as
against Ceideburg, for it is sufficient to the rights of

the defendants to determine whether or not they can do so when they pay the note involved in the suit and secure the note and mortgage given by Ceideburg to plaintiff. The amount which the defendants agree to pay the plaintiff by reason of the contract entered into at the time the note involved here was executed was justly due the plaintiff and was in no manner connected, as far as the defendants are concerned, with any fraud. Ceideburg, by signing this contract, has recognized his obligation to the defendants for an amount which is justly due the plaintiff and bound himself to pay it. The plaintiff, in his endeavor to collect this obligation of the defendants, is in no manner driven to the necessity of disclosing the original transaction with Ceideburg. This note involved a special and distinct transaction and it cannot be defeated by what precedes it because there is no part of the illegality charged in the first transaction that entered into and formed any basis for the contract involved here. The note is binding on defendants. [Curry v. LaFon, 133 Mo. App. 163, 113 S. W. 246; Roselle v. Beckemir, 134 Mo. 380, 35 S. W. 1132; Gwinn v. Simes, 61 Mo. 335.] The plaintiff, shortly after defendants gave this note, paid the Gwinn notes referred to in the contract. No part of the note sued on has been paid and we perceive of no reason, legal, moral or equitable, why the defendants should not pay it and we, therefore, reverse the judgment and remand the cause with directions to the trial court to enter judgment for the plaintiff for the full amount of the note, together with interest and attorney's fees according to the tenor thereof, upon the plaintiff endorsing to the defendants the $1000 note and delivering the same, together with the chattel mortgage to the clerk of the circuit court for the said defendants.

*Sturgis, J.*, concurs; *Farrington, J.*, concurs in result.